407 F.Supp. 729 (1975)
Bruce B. ADAMS, Plaintiff,
v.
David MATTHEWS, Secretary of Health, Education and Welfare, Defendant.
No. 75-484C(A).
United States District Court, E. D. Missouri, E. D.
December 29, 1975.
V. Kenneth Rohrer, Farmington, Mo., for plaintiff.
Jean C. Hamilton, Asst. U. S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM AND ORDER
HARPER, Senior District Judge.
Bruce B. Adams has petitioned this District Court for judicial review of an adverse decision against him by the Secretary *730 of Health, Education and Welfare. This proceeding is governed by Title 2 of the Social Security Act, as amended, 42 U.S.C. § 401 et seq.
Plaintiff filed his application to establish disability on October 17, 1972; this being made to acquire disability insurance benefits. This application was considered and reconsidered by the Secretary, and the claim was denied.
Plaintiff subsequently requested a hearing, which was held on September 16, 1974, where he was represented by counsel. He and three witnesses appeared at this hearing and testified. The Social Security Law Judge rendered a decision adverse to the plaintiff on December 10, 1974. This ruling was affirmed by the Appeals Council of the Social Security Administration on April 22, 1975. This then, is the "final decision" of the Secretary which is reviewable by this Court under § 405(g). It should perhaps be noted that the plaintiff had previously filed a disability application on April 20, 1971, which was denied by the Secretary on July 28, 1971.
The plaintiff, with counsel, has filed a timely application for judicial review and the Secretary has filed a transcript of the record of the proceeding along with his answer to plaintiff's complaint.
At the conclusion of plaintiff's hearing, the Social Security Law Judge made the following findings in this case:
1. The claimant stated he was born on April 5, 1924, and has a Bachelor of Science degree in Education. He has worked as a schoolteacher, sales clerk, insurance salesman, area consultant for TB association, welfare case worker, and as a watchman guard.
2. The claimant met the special earnings requirements on February 15, 1971, the alleged date of disability onset, and continues to meet them at least through March 31, 1975.
3. The claimant has no significant inner ear problems, nervous condition or problem with blackouts.
4. The claimant does have emphysema, chronic colitis and cirrhosis of the liver but not to the extent that he would be precluded from engaging in the work he had previously performed.
5. The claimant was not prevented from engaging in any substantial gainful activity for any continuous period beginning on or before the date of this decision which has lasted or could be expected to last for at least 12 months.
6. The claimant was not under a "disability," as defined in the Social Security Act, as amended, at any time prior to the date of this decision.
As noted above, the plaintiff has filed for judicial review, the Secretary has answered, and both parties have filed motions for summary judgment with legal support attached thereto.
Title 42 U.S.C. § 405(g) provides that the District Court may, upon the pleadings and transcript of the record, enter judgment affirming, reversing, or modifying the final decision of the Secretary. This Section in part provides:
The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . .
Substantial evidence is defined in Celebrezze v. Bolas, 316 F.2d 498 (8th Cir. 1963), "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be based on the record as a whole."
At plaintiff's hearing, he testified that he was born in 1924, that he was approximately 5 foot eleven and a half inches tall, and that his average weight was about 175 pounds. He stated he had a college degree, a B.S. in Education, and that after college, he taught school for one year (Tr. 29). After that he had miscellaneous jobs as a sales clerk, paper business, insurance salesman, and claims adjuster, during the period 1949 to 1952. After that, he claimed he went to work for the Missouri Tuberculosis Association, where he stayed until September of *731 1968 (Tr. 31). After that, he worked for the Missouri Division of Welfare for about ten months, and subsequently for a detective agency until February of 1971 (Tr. 56).
He testified that after that he commenced having blackouts. He went to V.A. Hospitals in St. Louis in 1971, and in Poplar Bluff in 1972. He testified that he was having trouble with diarrhea and involuntarily nodding or sleeping. He testified that he used to drink "very regularly and very heavily" (Tr. 44), but that he only drinks beer now. He stated he receives $159.00 a month from the Veterans Administration. He advised the Social Security Law Judge that his condition would "very definitely" be bettered by stopping smoking and drinking. But, "Quitting smoking is not an easy thing;" he said, "The quitting drinking, there's no great problem there. Well, I enjoy it, and I don't  I don't think the beer hurts me, particularly." (Tr. 74.)
Dr. T. J. Bentley, D.O., testified that he examined the plaintiff in August of 1974. Dr. Bentley testified that the plaintiff was suffering from chronic alcoholism, cirrhosis of the liver, and emphysema. The doctor testified that claimant was totally disabled (Tr. 44).
E. R. Adams, the father of the plaintiff, testified that his son was wounded in World War II, and that he had been in six separate serious jeep accidents. He testified that in 1966, plaintiff was divorced from his wife and came to live with him. He stated he would stay in the basement for long periods of time, taking only an occasional meal (Tr. 81). He testified he had another auto accident in 1971, and that he was continually sick. Mr. Adams testified that the plaintiff had remarried, but that neither worked and they both lived on plaintiff's V.A. pension. Plaintiff married his second wife, Wanetta Cook, on May 11, 1967.
One Ralph Graham, a neighbor, testified for the plaintiff. He claimed that plaintiff had episodes of falling and that he involuntarily fell asleep from time to time, and that he suffers from diarrhea.
In addition to the testimony of Dr. Bentley, the file contains a medical report from David P. Grace, Ph.D., (Tr. 142). Plaintiff has been referred to Dr. Grace by the Missouri Vocational Rehabilitation Unit. Dr. Grace's psychological evaluation indicated plaintiff to have hysterical neurosis. He stated he was attracted to, and repelled by different people, and has concerning emotional dependency and sexuality. Dr. Grace felt that the probability of successful rehabilitation is well below average unless psychological consultation is undertaken.
A report from the John Cochran Veterans Hospital in St. Louis (Tr. 151), revealed plaintiff to have chronic alcoholism, diabetes mellitus, emphysema and vasovagal syncope. This is dated March 31, 1971.
A medical report from Dr. B. A. Michaelis, M.D., of Fredericktown, Missouri, dated October 10, 1972, showed treatment for vertigo at that time (Tr. 155).
A report from Dr. W. E. Magee, M.D., (Tr. 158) summarizes his views of the plaintiff, made on November 10, 1972:
It is my impression that this man is unemployable, he is chronically ill, he would never pass a physical examination for employment anywhere, and this is total and permanent, based upon his psychiatric disease, which is incurable, and the degree of pulmonary insufficiency that he has.
A hospital summary, mostly illegible, was furnished by the Veterans Administration Hospital at Poplar Bluff. This summary is dated April 22, 1973. This hospital reported a chronic brain syndrome, a macrocytic anemia type, intermittent diarrhea, and chronic alcoholism.
Dr. W. E. Magee, M.D., reported again on September 16, 1974, indicating that plaintiff was beyond rehabilitation. He reaffirmed his opinion that he is presently and permanently disabled from any type of work, including sedentary type occupations.
Dr. Wendell K. Stewart, M.D., of Cape Girardeau, Missouri, reported on November 14, 1974 (Tr. 193). He noted plaintiff's *732 long addiction to alcohol, admitting to about a quart of vodka and a cut back to now drinking "only six to eight cans of beer per day." His impressions were alcohol addiction, peripheral neuropathy, cirrhosis of the liver, and drug dependence. He recommended:
This is a chronic alcoholic and drug abuser who is now showing the ravages of years of abuse. He tried to talk me into giving him prescriptions for barbiturates and Lomotil. If he were to completely abstain from booze and give up drugs, he might well be able to have several productive years ahead, as his mentation is not yet affected, at least as far as we can now tell. His motivation may be open to question and this lack of motivation would seem to be his major "problem". He is, in my opinion, competent to manage his own affairs.
In this case, we are forced to conclude that Adams' asserted disabilities are traceable to heavy drinking. There is a growing and logical theory that chronic alcoholism is a disease, not a crime, and that it should be treated as such. Similarly, where chronic alcoholism alone or in combination with other causes, is shown to have resulted in medically determinable disability, rendering gainful employment impossible, recovery of benefits under the Social Security Act ought not to be barred on account of the origin of the disability. Lewis v. Celebrezze, 359 F.2d 398 (4th Cir. 1966); Driver v. Hinnant, 356 F.2d 761 (4th Cir. 1966).
Plaintiff's counsel urges that we disregard Dr. Stewart's testimony in light of the testimony of Drs. Magee and Bentley, and we must admit that the record of this case is replete with evidence that Adams suffers from chronic alcoholism which has undoubtedly caused the cirrhosis situation and driven him to the related drug abuse problem. Indeed, there is evidence of total disability.
This situation is viewed in Griffis v. Weinberger, 509 F.2d 837 (9th Cir. 1975), as follows:
The proposition that chronic acute alcoholism is itself a disease, "a medically determinable physical or mental impairment," is hardly debatable today. The Secretary does not disagree. We know, too, that alcoholism is often accompanied by underlying severe physical or mental impairment, or both, although this is not always the case. The question presented to the Secretary was whether Griffis' impairment was serious enough to make him disabled  that is, unable to engage in any gainful activity. The presence or absence of "underlying" physical or mental impairment as accompaniments or products of the disease may be relevant evidence relating to the decision of that question, but absence of them is not controlling. On this proposition most of the cases are in agreement. 509 F.2d at 838.
However, the Eighth Circuit noted in Brasher v. Celebrezze, 340 F.2d 413 (8th Cir. 1965), that there had been adverse findings in the presence of chronic alcoholism, even coupled with moderate cirrhosis, which have been upheld. And, it is the opinion of this Court that you cannot be a disabled alcoholic until you have tried otherwise.
The plaintiff has made repeated assertions to medical people in this case, that he does not stop drinking because he "likes to drink." The record further suggests that the real cause for plaintiff's continued unemployment is his addiction to alcohol, rather than physical or mental impairment. We are not so Victorian as to be indifferent to the expanding theory of alcoholism being a disease. However, any sensible person who has any desire whatsoever to continue life, will assist the medical profession in fighting disease once it is diagnosed. We are not convinced that simply because Adams wants to continue his drinking habits, that this is sufficient to show a disability within the meaning of the Act. It is true that both physical and mental impairments are being created by Adams' use of alcohol. The diarrhea, the cirrhosis, the repeated absence *733 from work, the need for drugs to settle hangover nerves, all seem to follow the continued use of excessive alcohol.
Dr. Wendell K. Stewart, M.D., in his recommendations, (Tr. 195) suggested Adams abstain from booze and give up drugs, which might give him several productive years ahead. He stated his mentation was not affected, and he was competent to manage his own affairs. We feel that the Secretary has the right to ask this cooperation from the claimant before finding that he is unable to engage in gainful employment because of "disability."
The resolution of this case does not come easy, but we must conclude under the circumstances, that the findings of the Social Security Law Judge that the claimant was not under a "disability" has been supported by substantial evidence. This Court feels that the claimant must cooperate with medical and psychological efforts to assist him. He must try Alcoholic Anonymous, anti-alcoholic hospitalization, or simple willpower to attempt to bring himself under control. Mays v. Ribicoff, 206 F.Supp. 170 (S.D.W.Va.1962).
A claimant who willfully fails to follow prescribed treatment which could be expected to restore his ability to work is not under a disability. Osborne v. Cohen, 409 F.2d 37 (6th Cir. 1969); Havens v. Weinberger, 477 F.2d 138 (5th Cir. 1973).
Osborne presents a strong dissent by Judge Combs which states that, although alcoholic addiction may be eventually remedial is not decisive  that you must take a claimant as you find him. This Court agrees with the majority and feels some attempt at remedy to be the better rule.
Dr. Stewart apparently feels that Adams still has the capacity to work, if only he would follow the advice of physicians "to stop alcohol." This Court feels that Dr. Stewart's testimony furnished the Secretary with substantial evidence upon which to base his findings. It may be that Adams will fail in a bona fide effort to stop drinking; at that time, the Secretary might choose to reconsider.
For these reasons, the motion of the plaintiff for summary judgment is denied and defendant's same motion is sustained.