Bruce B. ADAMS, Appellant,

v.

Caspar WEINBERGER, Secretary of Health, Education and Welfare, Appellee.

No. 76–1109.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 9, 1976.

Decided Jan. 21, 1977.

Clinton Roberts, Farmington, Mo., for appellant.

Jean C. Hamilton, Asst. U. S. Atty., St. Louis, Mo., for appellee; Donald J. Stohr (former U. S. Atty.), St. Louis, Mo., on brief.

Before BRIGHT and WEBSTER, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

BRIGHT, Circuit Judge.

Bruce B. Adams, a chronic alcoholic, has sought and been denied Social Security disability insurance benefits. This appeal by Adams from a summary judgment of the district court sustaining the administrative denial of benefits,[1] presents the difficult problem of evaluation of chronic alcoholism as a factor in Adams' disability claim.[2] For reasons stated below, we vacate the judgment of the district court and direct that Adams' claim for disability insurance benefits be remanded to the Secretary of Health, Education and Welfare for further proceedings consistent with this opinion.

I.

The district court accurately stated the facts, which are not in serious dispute, as follows:

At plaintiff's [Adams] hearing, he testified that he was born in 1924, that he was approximately 5 foot eleven and a half inches tall, and that his average weight was about 175 pounds. He stated he had a college degree, a B.S. in Education, and that after college, he taught school for one year (Tr. 29). After that he had miscellaneous jobs as a sales clerk, paper business, insurance salesman, and claims adjuster, during the period 1949 to 1952. After that, he claimed he went to work for the Missouri Tuberculosis Association, where he stayed until September of 1968 (Tr. 31). After that, he worked for the Missouri Division of Welfare for about ten months, and subsequently for a detective agency until February of 1971 (Tr. 56).

He testified that after that he commenced having blackouts. He went to V. A. hospitals in St. Louis in 1971, and in Poplar Bluff in 1972. He testified that he was having trouble with diarrhea and

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. *Adams v. Matthews*, 407 F.Supp. 729 (E.D. Mo.1975). The procedural history of this claim is as follows. Claimant applied for disability insurance benefits on October 17, 1972. His claim was disallowed on December 7, 1972. Claimant requested a hearing which was held September 16, 1974. The application was denied by an Administrative Law Judge on December 10, 1974. Claimant requested a review of this decision on January 28, 1975. On April 22, 1975, the Appeals Council affirmed the Administrative Law Judge and this became the final decision of the Secretary of Health, Education and Welfare. On June 2, 1975, claimant filed suit in the United States District Court pursuant to 42 U.S.C. § 405(g). The district court sustained the Secretary's motion for summary judgment on December 29, 1975, and claimant appealed to this court.

2. For a discussion of Social Security "disability", *see* Liebman, *The Definition of Disability in Social Security and Supplemental Security Income: Drawing the Bounds of Social Welfare Estates,* 89 Harv.L.Rev. 833 (1976).

involuntarily nodding or sleeping. He testified that he used to drink "very regularly and very heavily" (Tr. 44), but that he only drinks beer now. He stated he receives $159.00 a month from the Veterans Administration. He advised the Social Security Law Judge that his condition would "very definitely" be bettered by stopping smoking and drinking. But, "Quitting smoking is not an easy thing;" he said, "The quitting drinking, there's no great problem there. Well, I enjoy it, and I don't—I don't think the beer hurts me, particularly." (Tr. 74).

Dr. T. J. Bentley, D.O., testified that he examined the plaintiff in August of 1974. Dr. Bentley testified that the plaintiff was suffering from chronic alcoholism, cirrhosis of the liver, and emphysema. The doctor testified that claimant was totally disabled (Tr. 44).

E. R. Adams, the father of the plaintiff, testified that his son was wounded in World War II, and that he had been in six separate serious jeep accidents. He testified that in 1966, plaintiff was divorced from his wife and came to live with him. He stated he would stay in the basement for long periods of time, taking only an occasional meal (Tr. 81). He testified he had another auto accident in 1971, and that he was continually sick. Mr. Adams testified that the plaintiff had remarried, but that neither worked and they both lived on plaintiff's V. A. pension. Plaintiff married his second wife, Wanetta Cook, on May 11, 1967.

One Ralph Graham, a neighbor, testified for the plaintiff. He claimed that plaintiff had episodes of falling and that he involuntarily fell asleep from time to time, and that he suffers from diarrhea.

In addition to the testimony of Dr. Bentley, the file contains a medical report from David P. Grace, Ph.D., (Tr. 142). Plaintiff has been referred to Dr. Grace by the Missouri Vocational Rehabilitation Unit. Dr. Grace's psychological evaluation indicated plaintiff to have hysterical neurosis. He stated he was attracted to, and repelled by different people, and has concerning emotional dependency and sexuality. Dr. Grace felt that the probability of successful rehabilitation is well below average unless psychological consultation is undertaken.

A report from the John Cochran Veterans Hospital in St. Louis (Tr. 151), revealed plaintiff to have chronic alcoholism, diabetes mellitus, emphysema and vasovagal syncope. This is dated March 31, 1971.

A medical report from Dr. B. A. Micahelis, M.D., of Fredericktown, Missouri, dated October 10, 1972, showed treatment for vertigo at that time (Tr. 155).

A report from Dr. W. E. Magee, M.D., (Tr. 158) summarizes his views of the plaintiff, made on November 10, 1972:

> It is my impression that this man is unemployable, he is chronically ill, he would never pass a physical examination for employment anywhere, and this is total and permanent, based upon his psychiatric disease, which is incurable, and the degree of pulmonary insufficiency that he has.

A hospital summary, mostly illegible, was furnished by the Veterans Administration Hospital at Poplar Bluff. This summary is dated April 22, 1973. This hospital reported a chronic brain syndrome, a macrocytic anemia type, intermittent diarrhea, and chronic alcoholism.

Dr. W. E. Magee, M.D., reported again on September 16, 1974, indicating that plaintiff was beyond rehabilitation. He reaffirmed his opinion that he is presently and permanently disabled from any type of work, including sedentary type occupations.

Dr. Wendell K. Stewart, M.D., of Cape Girardeau, Missouri, reported on November 14, 1974 (Tr. 193). He noted plaintiff's long addiction to alcohol, admitting to about a quart of vodka and a cut back to now drinking "only six to eight cans of beer per day." His impressions were alcohol addiction, peripheral neuropathy, cirrhosis of the liver, and drug dependence. He recommended:

> This is a chronic alcoholic and drug abuser who is now showing the ravages

of years of abuse. He tried to talk me into giving him prescriptions for barbiturates and Lomotil. If he were to completely abstain from booze and give up drugs, he might well be able to have several productive years ahead, as his mentation is not yet affected, at least as far as we can now tell. His motivation may be open to question and this lack of motivation would seem to be his major "problem". He is, in my opinion, competent to manage his own affairs.

[*Adams v. Matthews,* 407 F.Supp. 729, 730–32.]

Following this factual recitation, the district court concluded that Adams' asserted disabilities "are traceable to heavy drinking[,]" and noted that Adams' chronic alcoholism has caused "the cirrhosis situation and driven him to the related drug abuse problem." 407 F.Supp. 732. Reaching this conclusion, the district court sustained the findings of the Administrative Law Judge, adopted by the Appeals Council, as based on substantial evidence that Adams was not under a "disability" because he had not followed the advice of physicians "to stop alcohol."

The Administrative Law Judge had reviewed the physicians' reports on claimant's physical condition and noted that Adams "does have emphysema, chronic colitis and cirrhosis of the liver but not to the extent that he would be precluded in the work he had previously performed." The Administrative Law Judge came to the following conclusion:

> It appears that the claimant's inability to work can be attributed to his drinking habits. In the absence of evidence that the claimant has significant organ damage that precludes work activity, it must be found that the power and ability to remedy his plight rests solely with him. Under the circumstances, he has not established his entitlement to disability insurance benefits.

## II.

With this factual background, we turn to the case law and current Social Security regulations relating to alcoholism. Several cases have denied that chronic alcoholism can be a basis for recovery of disability insurance benefits under the Act, relying in part upon then-existing Social Security administrative regulations categorizing chronic alcoholism as a "personality disorder" characterized by patterns of socially unacceptable behavior which does not result in inability to engage in substantial gainful activity in the absence of an associated severe psychoneurosis or psychosis.[3] *Osborne v. Cohen,* 409 F.2d 37, 39 (6th Cir. 1969); *Brasher v. Celebrezze,* 340 F.2d 413, 417–18 (8th Cir. 1965). This regulation has since been repealed. *See Griffis v. Weinberger,* 509 F.2d 837, 838 (9th Cir. 1975). Thus, the cases denying benefits in reliance on that regulation are now of doubtful authority.

In the present case, the Administrative Law Judge rejected alcoholism as a basis for disability benefits, emphasizing the absence of evidence of "significant organ damage that precludes work activity[.]" The previous administrative regulations seemed to require that such organ damage be present in order for alcoholism to be considered an impairing "functional nonpsychotic disorder." 20 C.F.R. § 404.1506, Appendix to Subpart P, ¶ 12.04(G)(3) (1974). But § 404.1506 and ¶ 12.04 of the Appendix to Subpart P, as they relate to alcoholism and drug addiction, have been modified to express a more general standard:

> (d) The presence of a condition diagnosed or defined as addiction to alcohol or drugs will not, by itself, be the basis for a finding that an individual is or is not under a disability. As with any other condition, the determination as to disability in such instances shall be based on symptoms, signs, and laboratory findings. [§ 404.1506(d), 40 Fed.Reg. 30263, July 1975.]

---

**3.** Former 20 C.F.R. § 404.1519(c)(2)(iii). *See Marion v. Gardner,* 359 F.2d 175, 179 n.2 (8th Cir. 1966).

The Commissioner of Social Security, explaining these changes, noted that " * * * the changes are intended only to clarify the regulations and not in any way change their effect upon disability claimants with a condition diagnosed or defined as addiction to alcohol or drugs." The Commissioner added:

The intent of this particular [prior] listing criterion has been frequently misunderstood. * * * [I]n all disability claims, including those involving drug addiction and alcoholism, the sum total of impairment or impairments must be considered. * * *

The primary purpose of these changes in the regulation is to make it clear that individuals with conditions diagnosed or defined as addiction to alcohol or drugs will be treated no differently than individuals without such conditions. In no case is disability based on "certification" or on the immediate temporary effects of a condition. In order to insure equitable treatment of all applicants, it is imperative that, as with any other condition, the determination as to disability in the presence of addiction be based on signs, symptoms, and laboratory findings. [40 Fed. Reg. pp. 30262–63, July 18, 1975.]

This modification in the regulations is consistent with the threefold requirement flowing from the statutory definition of disability:[4]

(a) that there be a medically determinable physical or mental impairment of the type specified by the statute, (b) that there be an inability to engage in any substantial gainful activity, and (c) that the inability be by reason of the impairment; that substantial gainful activity is that which is both substantial and gainful and within the claimant's capability, realistically judged by his education, training and experience; and that the emphasis is on the particular claimant's capabilities

and on what is reasonably possible, not on what is conceivable or theoretical.

*Marion v. Gardner,* 359 F.2d 175, 180, *citing Celebrezze v. Bolas,* 316 F.2d 498, 500–01 (8th Cir. 1963); *Celebrezze v. Sutton,* 338 F.2d 417, 418 (8th Cir. 1964); *Brasher v. Celebrezze,* 340 F.2d 413, 414 (8th Cir. 1965). *See also Martin v. Secretary of Department of Health, Education and Welfare,* 492 F.2d 905 (4th Cir. 1974).

■ By focusing on "the absence of evidence that claimant has significant organ damage that precludes work activity," the Administrative Law Judge and Appeals Council applied an improper legal standard to this disability claim and for that reason, a remand of the case to the Secretary for further consideration and, if necessary, for further hearings in order to apply the proper legal standard is appropriate. *Griffis v. Weinberger,* 509 F.2d 837 (9th Cir. 1975). *See also Badichek v. Secretary of Health, Education and Welfare,* 374 F.Supp. 940 (E.D.N.Y.1974).

III.

We turn next to the administrative determination that the disability claim should be disallowed because "it must be found that the power and ability to remedy [Adams' plight] rests solely with him." Although no specific findings were enunciated in support of that conclusion by the Administrative Law Judge, the district court in its opinion, as we have already noted, commented:

And, it is the opinion of this Court that you cannot be a disabled alcoholic until you have tried otherwise.

The plaintiff has made repeated assertions to medical people in this case, that he does not stop drinking because he "likes to drink." The record further suggests that the real cause for plaintiff's continued unemployment is his addiction to alcohol, rather than physical or mental impairment. We are not so Victorian as

---

4. 42 U.S.C. § 423(d)(1)(A) defines "disability" as:

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

to be indifferent to the expanding theory of alcoholism being a disease. However, any sensible person who has any desire whatsoever to continue life, will assist the medical profession in fighting disease once it is diagnosed. We are not convinced that simply because Adams wants to continue his drinking habits, that this is sufficient to show a disability within the meaning of the Act. It is true that both physical and mental impairments are being created by Adams' use of alcohol. The diarrhea, the cirrhosis, the repeated absence from work, the need for drugs to settle hangover nerves, all seem to follow the continued use of excessive alcohol. [407 F.Supp. 732–33.]

The pertinent Social Security regulation provides as follows:

An individual with a disabling impairment which is amenable to treatment that could be expected to restore his ability to work shall be deemed to be under a disability if he is undergoing therapy prescribed by his treatment sources but his impairment has nevertheless continued to be disabling or can be expected to be disabling for at least 12 months. However, an individual who willfully fails to follow such prescribed treatment cannot by virtue of such failure be found to be under a disability. Willful failure does not exist if there is justifiable cause for failure to follow such treatment.
[20 C.F.R. § 404.1507.]

The courts have recognized that an alcoholic claimant must cooperate with medical and psychological efforts to assist him in overcoming the disability, and have denied benefits upon an appropriate showing that the claimant would not do anything to help himself. *Mays v. Ribicoff,* 206 F.Supp. 170 (S.D.W.Va.1962); *see also Osborne v. Cohen,* 409 F.2d 37 (6th Cir. 1969) (evidence that the affliction was not so deepseated as to be irremediable); *Havens v. Weinberger,*

477 F.2d 138 (5th Cir. 1973); *compare Brasher v. Celebrezze,* 340 F.2d 413 (8th Cir. 1965); *Lewis v. Celebrezze,* 359 F.2d 398 (4th Cir. 1966).

The more recent opinions have criticized the rationale enunciated in the *Mays* case that disability benefits are to be denied where the claimant has the capacity to work if only he would follow the advice of physicians to "stop alcohol." The Ninth Circuit has commented on *Mays*:

In so far as *Mays* can be read as holding that an alcoholic can never be found disabled because all that he need do is "stop alcohol," we think it wrong. [*Griffis v. Weinberger,* 509 F.2d 837, 838 n.1.]

█ In the case of alcoholism, the emphasis should be placed on whether the claimant is addicted to alcohol and as a consequence has lost voluntary ability to control its use. *Griffis v. Weinberger, supra; Badichek v. Secretary of Health, Education and Welfare,* 374 F.Supp. 940 (E.D.N.Y.1974); *Cornett v. Weinberger,* CCH Unemployment Insurance Reports, New Matters Transfer Binder ¶ 14,191 (S.D.Ohio 1975); *see Osborne v. Cohen, supra,* Judge Combs, dissenting. We believe that the approach to the problems of alcoholism represented by *Griffis, Cornett,* and *Badichek,* and the *Osborne* dissent, is realistic and appropriate.

At the hearing before the Administrative Law Judge, Dr. T. J. Bentley, an osteopathic physician, indicated that the claimant's addiction to alcohol was long-standing and would require extensive treatment from a medical expert in that field.[5] In other portions of his testimony, Dr. Bentley indicated that Adams needed psychiatric care. The physician stated that he didn't think the claimant "even remotely realizes" the extent of his illness. The medical reports offered in evidence were essentially consistent with this medical opinion, with the possible exception of Dr. Stewart's report.[6]

---

**5.** Dr. Bentley testified as to his recommendation that he (Bentley) would send Adams to Rosenbaum in St. Louis and have him admitted to Renard. [Tr. 52.] We take judicial notice that the reference is to Dr. Herbert Rosenbaum and that Renard is the psychiatric unit at Barnes Hospital.

**6.** Claimant was examined by Dr. Stewart at the request of the Missouri State Agency for Vocational Rehabilitation on November 14, 1974,

But even Dr. Stewart's report, upon close analysis, does not contradict Dr. Bentley's opinion that Adams is addicted to alcohol and needs psychiatric help. We reiterate Dr. Stewart's conclusion:

> This is a chronic alcoholic and drug abuser who is now showing the ravages of years of abuse. He tried to talk me into giving him prescriptions for barbiturates and Lomotil. If he were to completely abstain from booze and give up drugs, he might well be able to have several productive years ahead, as his mentation is not yet affected, at least as far as we can now tell. His motivation may be open to question and this lack of motivation would seem to be his major "problem". He is, in my opinion, competent to manage his own affairs. [407 F.Supp. 732.]

The comment on abstaining from booze and giving up drugs and the speculation on claimant's motivation do not address squarely the crucial issue of whether or not Adams has the capacity or can be motivated to be rehabilitated from chronic alcoholism, with or without outside psychiatric help.

In a similar case, Judge Dooling made this instructive comment:

> It may be that in the present case the Secretary's ultimate view may be that plaintiff's condition is one of voluntary resignation to alcoholism as an escape of choice from a life of daily labor and not a helpless self-entrapment in an unconquerable addiction. However, it is concluded that the Secretary must consider and decide whether or not the plaintiff is totally disabled because he has through his addiction to alcohol so far lost self-control that he is impotent to seek and use means of rehabilitation, and, if he finds that such a permanent disability does exist, whether it is the kind of disability with

which the Act is intended to deal. That latter judgment should in the first instance be articulated by the Secretary as the one long charged with the administration of the Act and most familiar with the history and ramifications of its applications.
[*Badichek v. Secretary of Health, Education and Welfare,* 374 F.Supp. 940, 942–43 (E.D.N.Y.1974).][7]

In our judgment, a finding of no disability cannot rest on the testimony of Adams, admittedly a chronic alcoholic, that "the quitting drinking, there is no great problem there. Well, I enjoy it, and I don't —I don't think the beer hurts me, particularly."

Such testimony may be relevant if, medically, the claimant has the power to control his alcoholism; otherwise, the statement represents the rationalizations of a sick individual who does not realize the extent of his illness.

This case must be remanded to the administrative agency for further consideration and, if necessary, further hearings. On remand, the agency must apply the appropriate standards for assessment of alcoholism as a disabling disease in light of the most recent regulations of the Secretary. Moreover, as we have noted, the question of the claimant's own ability to resolve his problems, with or without additional medical help, must be addressed within the context of his illness.

Finally, we make an additional comment. If on remand it is found that the claimant is entitled to disability insurance benefits, continuing payment of those disability benefits may be conditioned upon claimant's undertaking reasonable efforts to treat his affliction.[8] In this connection,

---

subsequent to claimant's hearing before the Administrative Law Judge.

7. We note that *Badichek* was decided before the revisions in the administrative regulations as they apply to alcoholism, discussed in the text of this opinion.

8. For example, claimant could be referred to Alcoholics Anonymous. Also, we note that the Veterans Administration is devoting increased attention and resources to the fight against alcoholism among veterans. *New York Times,* Nov. 13, 1976, at 8. As a veteran, claimant may qualify for substantial medical psychiatric and counseling rehabilitative assistance from the VA.

we think it appropriate to observe that the Supplementary Security Income (SSI) provisions of the Social Security Act, and the SSI regulations, disqualify a drug addict or an alcoholic from SSI benefits

> unless such individual is undergoing any treatment that may be appropriate for his condition as a drug addict or alcoholic (as the case may be) at an institution or facility approved for purposes of this paragraph by the Secretary (so long as such treatment is available) and demonstrates that he is complying with the terms, conditions, and requirements of such treatment * * *.

[42 U.S.C. § 1382(e)(3)(A).][9]

A similar requirement for eligibility for receipt of continuing Social Security disability insurance payments seems consistent with the thrust of the existing regulation, 20 C.F.R. § 404.1507, quoted at page 244 *supra,* mandating that a disabled individual follow treatment prescribed to alleviate his or her disability.

The issues we have discussed in this opinion need to be specifically addressed in the first instance by the administrative agency. Accordingly, the judgment denying Adams disability insurance benefits is reversed. The district court on our remand is directed to enter its judgment remanding the case to the Secretary for further proceedings consistent with our opinion. *See Badichek v. Secretary of Health, Education and Welfare,* 374 F.Supp. 940 (E.D.N.Y.1974).

---

**9.** The supplementing regulations are set forth at 20 C.F.R. §§ 416.981–85. *See* 40 Fed.Reg. pp. 51624–25, Nov. 6, 1975.