Charles VEAL, Appellant,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare of the United States, Appellee.

No. 79–1365.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1979.

Decided Nov. 28, 1979.

J. L. Whaley, Legal Services, St. Louis Mo. (argued), and Brooke A. Berger, St. Louis, Mo., on brief, for appellant.

Bruce D. White, Asst. U. S. Atty., St. Louis, Mo. (argued), Robert D. Kingsland, U. S. Atty., St. Louis, Mo., and Paul P. Cacioppo, Regional Atty., Region VII and Francis Reddis, Atty., Dept. of Health, Education and Welfare, Kansas City, Mo., on brief, for appellee.

Before LAY, HEANEY and HENLEY, Circuit Judges.

LAY, Circuit Judge.

On May 13, 1977, Charles Veal filed an application for widower's benefits pursuant to 42 U.S.C. § 402(f). After a hearing, at which Veal appeared pro se, the administrative law judge (ALJ) denied his application finding that Veal was not under a disability as defined by 42 U.S.C. § 423(d). The ALJ's decision was affirmed by the Secretary and the district court. This appeal followed.

Charles Veal is a childless, 53 year old widower who is presently receiving social security wage earner disability benefits. He now seeks to receive benefits under his deceased wife's account. Veal claims that seizures, blackouts and alcohol addiction have prevented him from working since 1972. Although his sister accompanied him to the hearing before the ALJ, Veal was the only witness. He complained of headaches, blackouts and problems with his eyes, and stated that he drinks "from worry." He testified that he drinks "a little bit" of whiskey and wine.

The medical evidence received by the ALJ consisted of records from several St. Louis area hospitals, and reports from two physicians, only one of whom actually examined Veal. The hospital records reveal numerous admissions for detoxification,[1] and frequent emergency room treatment for intoxication. On several occasions Veal appeared to have been hallucinating, and was observed at different times to have been disoriented, depressed, anxious and paranoid. In virtually all of the records he was described as having poor insight and impaired judgment.

Dr. Nathan Blackman examined Veal on April 22, 1974. In his neuropsychiatric report, Dr. Blackman observed that Veal's memory was disturbed, that he had difficulty maintaining concentration, and that he ascribed magical power to a chain and medal he wore around his neck. The overall impression, Dr. Blackman noted, was that of a relatively regressed psychotic. His diagnosis was schizophrenia and he concluded that Veal was unemployable.

After the hearing the ALJ referred these medical records to Dr. Glennon Schaefer, a surgeon, and asked him to determine whether Veal's impairments singly or in combination meet the requirements of the Act. Dr. Schaefer concluded that they do not, and that Veal is capable of sedentary or light work, "providing he had [sic] sufficient will power to avoid ethyl alcohol." The ALJ agreed with this assessment, and found that Veal had failed to prove that his impairments preclude any gainful activity.

Veal filed suit in federal district court and both parties moved for summary judgment. The case was referred to a magistrate who concluded that the Secretary's decision was supported by substantial evidence. His recommendation that summary judgment be granted in favor of the Secretary was adopted by the district court.[2]

In order to qualify for widower's benefits, Veal must have been "disabled" within the meaning of section 423(d)(1)(A) on or before October 31, 1976.[3] A widower must meet the strict requirements of the statute and regulations. 42 U.S.C. § 423(d)(2)(B).[4]

---

1. Between March 1969 and May 1977 Veal was admitted to St. Louis State Hospital 33 times for detoxification. He was also admitted to Malcolm Bliss Mental Health Center three times between 1970 and 1972 for similar treatment.

2. The magistrate's recommendation was based upon his review of the medical evidence and Veal's testimony that he thought that he could handle a light job and that he drinks only "a little bit." He then observed: "The Secretary has neither the legal obligation nor the funds to sustain every boozer who attempts to insulate himself from the rigors of life, to which we are all exposed, by the comfortable submission to alcohol, with the resultant abandonment of work and self support."

3. This is the last day of the 84th month following the month of his wife's death. *See* 42 U.S.C. § 402(f)(6).

4. A less stringent standard is applicable to wage earner disability benefits under 42 U.S.C. § 423(d)(2)(A). Under that section, a wage earner need demonstrate only that he or she is

They provide that a widower is deemed disabled, unable to engage in *any* gainful activity, only if his impairment results in death or will last at least 12 months *and* the impairment is one that is listed in Appendix 1 to Subpart P of the regulations, or is determined by the Secretary to be medically the equivalent of a listed impairment. *See* 20 C.F.R. §§ 404.1515, 404.1501. According to section 404.1516 of the regulations, medical equivalence must be demonstrated by acceptable clinical and laboratory evidence including an opinion furnished by a physician designated by the Secretary.

The test for determining an alcoholic widower disability has not been addressed by this court. In *Adams v. Weinberger*, 548 F.2d 239 (8th Cir. 1977), we indicated approval of the following two step test for determining the existence of an alcoholic wage earner disability: (1) the claimant must have lost self-control such that "he is impotent to seek and use means of rehabilitation," and (2) his disability must be one encompassed by the Act. *Id.* at 245, (quoting *Badichek v. Secretary of HEW*, 374 F.Supp. 940, 942–43 (E.D.N.Y.1974)).[5]

■ According to the regulations, alcoholic addiction alone is not enough to satisfy the requirements for obtaining widower's disability benefits; the issue of disability must be determined separately. *See* 20 C.F.R. § 404.1517(d). In light of this section, we find that the *Adams* disability test for alcoholic wage earners is equally appropriate for alcoholic widowers. Therefore, the applicable test is: (1) whether Veal has lost self control such that he will not benefit from treatment; and (2) whether his impairment is the medical equivalent of a listed impairment.

■ The evidence in this record is insufficient with respect to both parts of the *Adams* test. The only evidence of Veal's ability to control his drinking is an observation contained in a Malcolm Bliss Mental Health Center discharge summary dated February 14, 1972, that "since the patient is [sic] below average intelligence, it is doubtful that he will stop drinking." Dr. Schaefer qualified his conclusion that Veal is capable of light work upon Veal's ability to control his drinking, but did not opine whether Veal is capable of such control. Veal's testimony that he drinks only "a little bit" of wine and whiskey is not conclusive.[6] *See Lewis v. Califano*, 574 F.2d at 456.

The evidence is also insufficient to support a finding that Veal's impairment does not meet the level of severity prescribed by the Secretary in the regulations. Dr. Schaefer was the only physician asked to make this evaluation. Not only was his opinion qualified by Veal's ability to control his drinking, it was given on the basis of his review of the medical evidence in the record without an examination of Veal. While opinions by non-examining physicians may constitute substantial evidence for consideration, this court has held that they deserve little weight in the overall evaluation of disability. *See Thorne v. Califano*, 607 F.2d

unable to engage in substantial gainful activity in order to qualify for disability benefits.

5. The regulation at issue in *Adams* provides that a claimant who wilfully fails to follow prescribed treatment cannot be found to be under a disability. *See Adams v. Weinberger*, 548 F.2d 239, 244 (8th Cir. 1977) (discussing 20 C.F.R. § 404.1507). The district court in *Adams* denied disability benefits based on that section, finding that Adams' unemployment and physical problems were due to his addiction to alcohol. Without making a finding as to his ability to stop drinking, the district court concluded, "[w]e are not convinced that simply because Adams wants to continue his drinking habits, that this is sufficient to show a disability within the meaning of the Act." *Id.* We

held on appeal that wage earner disability benefits should not have been denied without a finding as to Adams' voluntary ability to control the use of alcohol. *Id.* at 244–45; *Lewis v. Califano*, 574 F.2d 452, 455 (8th Cir. 1978). Contrary to the Secretary's argument there is no reason why this principle should not also be applied in determining disability under 402 U.S.C. § 402(f).

6. The ALJ's questioning of Veal regarding his alcohol problem was totally inadequate. He asked only three brief questions concerning Veal's drinking habits. They did not relate in any way to the issue of his ability to voluntarily control his drinking, and Veal's responses were not developed.

218, 219 (8th Cir. 1979); *Landess v. Weinberger*, 490 F.2d 1187, 1190 (8th Cir. 1974). Moreover, Veal's testimony that he believes he is capable of light work does not conclusively establish that he is capable of gainful activity. In the absence of the power to control his alcoholism, this statement is most likely the rationalization of a sick individual. *See Adams v. Weinberger*, 548 F.2d at 245.

■ We conclude that the decision of the Secretary is not supported by substantial evidence. Although the claimant has the burden of establishing the existence of a disability, the ALJ has a duty to develop the facts fully and fairly, particularly when the claimant is not represented by counsel. *See Thorne v. Califano*, at 219; *Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1974); *Sellars v. Secretary of HEW*, 458 F.2d 984, 986 (8th Cir. 1972). Because the record is insufficient, this case must be remanded to the Secretary for additional evidence. *See Thorne v. Califano*, at 219; *see also Davis v. Califano*, 605 F.2d 1067, 1073 (8th Cir. 1979). Specifically, the ALJ should elicit the opinions of examining as well as consulting physicians as to whether Veal is able to control his drinking, and whether his impairment meets or is equivalent to an impairment listed in Appendix 1 to Subpart P of the regulations.

Judgment reversed and remanded.