**Raymond MIGNEAULT, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendants.**

**C.A. No. 83–00334–S.**

United States District Court, D. Rhode Island.

Dec. 4, 1985.

Rhode Island Legal Services, Inc., James H. Hardy, Judith Fox, Providence, R.I., for plaintiff.

Samuel C. Fish, Regional Atty., Boston, Mass., and Lincoln C. Almond, U.S. Atty., Michael P. Iannotti, Ass't U.S. Atty., Providence, R.I., for defendants.

## MEMORANDUM AND ORDER

SELYA, District Judge.

The instant matter is before the court for judicial review of a "final decision" of the Secretary of Health and Human Services denying disability insurance benefits under Section 205(g) of the Social Security Act, as amended, 42 U.S.C. 405(g). This matter was referred to a United States Magistrate for preliminary review, findings, and recommended disposition as to defendant's motion for an order affirming the decision of the Secretary and plaintiff's cross motion for an order reversing that decision (or in the alternative, remanding the case to the agency for further findings). *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976); 28 U.S.C. § 636(b)(3). Magistrate Hagopian, in a memorandum filed on October 22, 1985 (Report), recommended that the case be remanded. Report at 9. The defendant has seasonably objected to these findings and recommendations.[1] Neither party has requested leave to argue orally.

The court has examined the record and the briefs with care. The issue presented for determination in the instant case is whether substantial evidence exists on the record to support the decision of the Secretary that plaintiff failed to establish that he was under a disability within the meaning of the Act. ("Substantial evidence" of course, is proof which " 'a reasonable mind might accept as adequate to support a conclusion.' " *Miranda v. Secretary of H.E.W.*, 514 F.2d 996, 998 (1st Cir.1975), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). The issue is further narrowed by the plaintiff's concession, *see, e.g.*, Plaintiff's Memorandum in Response to Defendant's Objection to the Magistrate's Decision at 4, that his cardiac condition and his bursitis (whether viewed alone or in combination with each other or with his alcoholism) do not render him disabled. As the magistrate put it, "Plaintiff concedes that his claim rests solely on the basis of his chronic alcoholism being so severe as to preclude him from performing any substantial gainful activity." Report at 5. Migneault, of course, has the burden of proof on this issue. *Mathews v. Eldridge*, 424 U.S. 319, 336, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Fruge v. Harris*, 631 F.2d 1244, 1246 (5th Cir.1980); *Reyes Robles v. Finch*, 409 F.2d 84, 86 (1st Cir.1969). *See also* 42 U.S.C. § 423(d)(5).

### I.

The procedural history of the case is tangled and deserves to be recounted in some detail. Migneault filed his original application for social security disability insurance benefits on November 19, 1979, alleging that he had been disabled since July, 1979. (T. 20). He averred in the application that he was incapacitated as a result of a heart condition, alcoholism, and bursitis. His claim for benefits was denied initially and at reconsideration, and Migneault timely requested a hearing, which was held before an Administrative Law Judge (ALJ) on July 23, 1980. On September 23, 1980, the ALJ issued an unfavorable decision (T. 150), and Migneault appealed.

On April 20, 1981, the Social Security Appeals Council vacated the ALJ's initial decision and remanded the case to another ALJ for the purpose of obtaining consultative psychiatric and psychological evaluations in order to determine the psychological restrictions placed on the claimant's occupational functioning by his alcoholism. (T. 172). The consultative examinations were obtained (T. 174, 182), and on September 25, 1981, a new ALJ rendered a second unfavorable decision. (T. 220) (Second Decision). Nothing daunted, Migneault again appealed. The Appeals Council denied him relief on March 11, 1982. (T. 231). Migneault then timely sought judicial review of

---

**1.** The plaintiff has not filed any objection to the    Report.

the final decision of the Secretary by filing this civil action.

Prior to any decision by this court, the defendant filed a motion to remand the case for further proceedings before the agency, specifically for the purpose of obtaining additional medical information concerning Migneault's heart condition. On December 10, 1982, this court granted the defendant's motion to remand. When the case was returned to the agency, it was assigned to the same ALJ who had authored the Second Decision. A consultative examination from Dr. James Mancini was procured. (T. 246). The ALJ issued the third (unfavorable) decision in this case on March 26, 1984 (T. 10) (Third Decision), which decision was adopted by the Appeals Council on July 30, 1984. (T. 8). It is from this determination that the plaintiff presently appeals.

## II.

The magistrate based his recommendation on the following line of reasoning. He held that "to recover, plaintiff must show irremediable alcoholism" which "lasted [for] a continuous period of not less than 12 months." Report at 7. And, he concluded that the ALJ "applied the incorrect law," Report at 8, in that he based his finding on a naked showing that Migneault's bouts with alcohol were sporadic, that is, that his inebriation "did not last at least 12 continuous months." *Id.* The magistrate pointed out that this perceived shortcut begged the key question, *i.e.,* whether or not "the problem [alcoholism] is irremediable," Report at 9, and suggested that a remand was essential in order to obtain a specific finding on this issue. *Id.*

## III.

The Secretary and the federal courts alike have struggled with the formulation of a suitable standard to assess the impact of alcohol vis-a-vis the Act. After considerable litigation of the relevant issues, it is now widely agreed that alcoholism, either alone or combined with other causes, can constitute a compensable disability if it prevents an applicant from en-

gaging in substantial gainful employment. *McShea v. Schweiker,* 700 F.2d 117, 119 (3d Cir.1983); *Cannon v. Harris,* 651 F.2d 513, 519 (7th Cir.1981) (per curiam); *Ferguson v. Schweiker,* 641 F.2d 243, 248 (5th Cir. 1981); *Hicks v. Califano,* 600 F.2d 1048, 1051 (4th Cir.1979); *Adams v. Weinberger,* 548 F.2d 239, 244 (8th Cir.1977). Where, as here, alcoholism is asserted to be the singular causative agent in the disability calculus, the plaintiff need not show the presence of significant end organ damage; it is enough if he has become addicted to alcohol and has lost the ability to control its (ab)use, thereby rendering him unemployable. *McShea,* 700 F.2d at 119; *Hicks,* 600 F.2d at 1051. But in the case at bar, the magistrate was overly simplistic (and therefore, wrong) when he opined that "all that is required is a showing that the problem is irremediable." Report at 9. The claimant must prove that his alcoholism is *both* irremediable *and* sufficiently severe so as to disable him, as a practical matter, from performing substantial gainful employment. Even proof of inability to control alcohol intake would not *per se* entitle an applicant to benefits; he still must show that this condition is a disabling one as defined by the Act. *See generally Swaim v. Califano,* 599 F.2d 1309, 1312 (4th Cir. 1979); *Adams,* 548 F.2d at 245 (and regulations referred to therein).

What is more, the magistrate took too restrictive a view of the ALJ's work product. The record, objectively viewed, does not, as the magistrate intimated, indicate that the ALJ followed a knee-jerk line of reasoning to the effect that "if plaintiff has any dry periods, he is not disabled" or that alcoholism cannot be "irremediable where plaintiff has had brief periods of sobriety." Report at 8. The Third Decision, to the contrary, reveals:

1. That the ALJ (T. 14–15) credited Dr. Christopher's finding (following a March 1980 examination) "that the claimant has had a problem with alcohol in November of 1979 ... but that he was presently with Alcoholics Anonymous and abstaining from alcohol ... [and] would have a reasonable chance of becoming employed in a light job after receiving rehabilitation services."

2. That the ALJ credited a report from a halfway house director that Migneault "had managed to stay alcohol free" from November 1979 through April 1980. T. 17.

3. That the ALJ further credited evidence that, "aside from a few relapses," alcohol usage had not adversely affected Migneault up to September 1981. *Id.*

4. The ALJ relied heavily, as he was entitled to do, on a consultative psychiatric evaluation performed on June 30, 1981 by Dr. Karkalas, who found that, notwithstanding Migneault's "alcohol dependence" and "the possibility that the claimant might return to drinking if he were confronted with pressure and stress," Migneault "appeared to be well motivated for rehabilitation" and his alcohol dependence did not limit "his ability to perform work requiring frequent contact with others" or his "ability to respond appropriately to ordinary work pressures." T. 18.

The record contains, as well, the opinion of Dr. Wuraftic, a clinical psychologist, T. 177–181, which was generally consistent with Dr. Karkalas's views; though Dr. Wuraftic did diagnose alcohol addiction, he found it to be in remission. T. 177. And, the record contains various state agency reports suggesting that the plaintiff, notwithstanding his "episodic excessive drinking," was employable and a candidate for rehabilitation. T. 109, 130, 138.

It was on this factual array that the ALJ found that Migneault "does not suffer from any significant functional limitations as the result of ... alcoholism," T. 19, and that he was "capable of meeting the mental and physical demands of his past relevant work as a security guard," [2] or in lieu thereof, that he was "capable of engaging in the full range of sedentary work at all times relevant to [the case]." T. 18. Contrary to the magistrate's assumption, Report at 7–9, the ALJ's finding that "there is no indication that any restrictions imposed by his excessive alcohol consumption lasted for a continuous period of at least 12 months," T. 18, was not a retreat to a "not-disabled-if-dry-for-any-time" rule, but a forthright recognition that, in Migneault's case, alcohol dependency had not disabled him for any period sufficient to trigger entitlement to benefits. The key to the puzzle was that the "restrictions" did not last for the requisite period, not merely that Migneault's inebriation was not continuous.

This reading of the ALJ's Third Decision is virtually compelled by close perscrutation of the Second Decision. (In this respect, it must be borne in mind that the Second Decision resulted from a remand by the Appeals Council directing that further evidence be obtained as to the restrictions placed on Migneault's occupational functioning by his alcoholism, T. 172, whereas the Third Decision came after a court-ordered remand mandating further exploration of the ramifications of the claimant's cardiac condition. Thus, it is not surprising that the Second Decision is considerably more detailed as to matters anent alcohol dependency.) In the Second Decision, filed on September 25, 1981, the ALJ specifically found that the claimant's "history of alcohol abuse" had not been a "significant problem" since April 1980; "that his alcoholism is currently in remission with abstinence;" [3] and that his alcoholism was "not disabling for [any] continuous period of 12 months." T. 228. He noted, moreover, that the evidence had failed to "establish that claimant's alcoholism has continued to be a severe problem." T. 227.

In sum, this is not a case such as *Adams, supra,* where the Secretary rejected alcoholism as a basis for disability benefits, *e.g.,* 548 F.2d at 242–43, nor a case such as *McShea, supra,* where the Secretary limited his consideration to "objective physical

---

**2.** The record reflects that Migneault's former work as a security guard required him only to sit at a desk, answer the telephone, and make periodic rounds. T. 83–86.

**3.** Read in context, the ALJ found that Migneault had been substantially "dry" from April 1980 through September 1981. His drinking was under control. The inference is unmistakable: the plaintiff's alcoholism was not only subject to remediation, but had in fact been palliated. And, the continuous 12 months of initial disability essential to catalyze coverage under the Act had not been established.

impairment resulting from alcoholism," 700 F.2d at 119, nor a case where "competent medical evidence" was lacking. *Ferguson,* 641 F.2d at 249. In this proceeding, the ALJ (i) recognized that alcohol dependency, standing alone, could bottom a claim for disability benefits, (ii) whether or not it had produced end organ damage or other physical impairment, (iii) so long as the condition was disabling and irreversible. The Second Decision resulted from a remand order designed to procure—and which did procure—competent medical evidence focussing directly on the nonorganic sequellae of the claimant's drinking problem. Inasmuch as the ALJ found that Migneault's condition was not disabling (and was in fact under good control), the cases relied upon by the magistrate were largely inapposite.[4]

■ The medical evidence here was, in the main, devoid of significant objective indicia of severe impairment (physical, mental, or psychological) attributable to alcoholism or otherwise. The ALJ was, at the very least, entitled to choose among competing inferences with respect to the plaintiff's ability to perform basic work activities. *See* 20 C.F.R. 404. 1521(b). He had ample chance to observe Migneault during his testimony; accordingly, the ALJ's opinion is entitled to considerable weight. *Rodriguez v. Secretary of Health & Human Services,* 647 F.2d 218, 223–24 (1st Cir. 1981).

■ Once administrative adjudication has occurred, it is the court's function, as to matters of fact, to determine only the existence of "substantial evidence" *vel non* —not to hear the claim afresh. And, in so doing, "conflicts and contradictions in the evidence are to be resolved by the Secretary, not the court." *Sitar v. Schweiker,* 671 F.2d 19, 22 (1st Cir.1982) (citing *Rodriquez,* 647 F.2d at 222). Just as "the Secretary is not at the mercy of every claimant's subjective assertions of pain," *Miranda v. Secretary of HEW,* 514 F.2d 996, 1000 (1st Cir.1975), and just as "the Secretary is not

bound to accept essentially anecdotal evidence of incapacity ...," *Cabral v. Schweiker,* No. 82–0285, slip op. at 4 (D.R.I. March 5, 1984), the Secretary need not assume that every instance of alcohol dependency is necessarily disabling. Indeed, it is settled beyond peradventure in this circuit that, absent a showing of related functional loss, psychological disorders are not ipso facto considered as disabling. *Sitar,* 671 F.2d at 20–21; *Gonzalez Perez v. Secretary of H.E.W.,* 572 F.2d 886, 887–88 (1st Cir.1978). And, the ALJ's determination that no such meaningful functional loss existed in Migneault's case finds ample sustenance in the docket.

■ The record is replete with substantial evidence which buttresses the ALJ's judgment that Migneault was not disabled by reason of his alcoholism. The weight of the medical and psychological proof, fairly viewed, conduces to that very conclusion. To be sure, it would have been better form for the ALJ expressly to have noted that the plaintiff's condition was "not irremediable," but no talismanic importance can be attached to his failure to use that precise language. If the law is to make sense, the presence or absence of buzz words cannot be issue-determinative. Here, as in *Goodermote v. Secretary,* 690 F.2d 5, 8 (1st Cir.1982), sufficient "other evidence" suggests that the claimant's alcohol dependency was under control and was not a pivotal problem.

Migneault has been represented from the outset of these proceedings by Rhode Island Legal Services. T. 27–29. He has been given every opportunity—not once, but three times—to make out a case reflective of his claimed disability. He has failed to do so. In his current efforts to secure yet another remand, he describes no new evidence which he is prepared to offer. This is neither a case where the claimant proffers any credible excuse for his failure to submit pertinent evidence in support of his position in a timely manner at the ad-

---

4. This case is factually as well as conceptually dissimilar from those cited in the Report. There is no proof here, as in *Ferguson,* 750 F.2d at 505 (appeal following remand), that "despite numerous attempts at rehabilitation, [the plain-

tiff] has not been able to control his addiction." Migneault, unlike the claimant in *Adams,* produced no medical evidence of "years of abuse," 548 F.2d at 242, such that he was "beyond rehabilitation." *Id.* at 241.

ministrative level, nor one in which persuasive new evidence has surfaced so as to make remand potentially fruitful. This is not a case where an error of law is apparent on the face of the record. This is not a case where factfinding has proceeded on the wings of whimsy, speculation, or conjecture. In sum, it is not a case where remand is indicated.

Denying statutory benefits to needy people is at best a sorrowful chore. But, policy is for the Congress: the courts must adjudicate evenhandedly, applying the procedural and substantive eligibility criteria built into the legislative scheme. If courts undertake to permit sympathy to override the measure of deference which is due to the Secretary's factfinding and to try these cases de novo, the will of the Congress will be thwarted and the entire administrative process will shrink to the status of a mere dress rehearsal. Such a result cannot be encouraged. As in other situations where courts review agency findings under the "substantial evidence" test, "it is not [the court's] function to retry the case on a cold record." *NLRB v. Blue Hills Cemetery*, 567 F.2d 529, 530 (1st Cir.1977).

In the case at bar, an inference of bona fide inability to perform basic work-related functions by reason of alcohol dependency is not a persuasive or compelling one. The reasoning of the ALJ in the Second Decision and in the Third Decision, taken in the ensemble, is sufficiently well articulated and is sufficiently well documented. The ALJ's findings were adequately derived from the proof and demonstrated fidelity to acceptable legal tenets. On this record as a whole, the plaintiff has failed to sustain his burden as to the existence *vel non* of his claimed disability.

## IV.

The ALJ's findings were reasonable, responsive to the proof (or the lack thereof) as adduced at the hearing, and consistent with the allocation of the devoir of persuasion. The claimant has had three bites at the Secretary's apple, and there is no principled way to cede him a fourth swallow. As this court has said in an analogous context:

Litigation is not evolutionary; there comes a point where a disgruntled suitor must accept the reality that, though he believes he is in the right, he has had a full and fair opportunity to convince a court [or an agency] of the merit of his cause, and has been rebuffed.

*Leahey v. University of Rhode Island*, No. 85–0234–S, slip op. at 5 (D.R.I. Aug. 1, 1985).

Accordingly, for the reasons mentioned, the Secretary's objection to the Report must be, and hereby is, sustained. The recommendation contained in the Report is rejected. The court finds that the final decision of the Secretary was predicated upon constitutive evidence in the record, and that there is neither good cause nor warrant for a further remand. Therefore, the plaintiff's motion to reverse or remand is denied and the Secretary's motion to affirm is granted. Judgment shall enter accordingly.

*It is so ordered.*