**Jack GERST, Plaintiff-Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.**

No. 81–3693.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 16, 1983.

Decided June 13, 1983.

John A. McNally (argued), Youngstown, Ohio, for plaintiff-appellant.

Dale F. Kainski, Richard J. French (argued), Cleveland, Ohio, Asst. U.S. Attys., for defendant-appellee.

Before KENNEDY, MARTIN and WELLFORD, Circuit Judges.

PER CURIAM.

Plaintiff-appellant appeals from a judgment of the United States District Court for the Northern District of Ohio, Eastern Division (per Magistrate Charles R. Laurie), affirming the final decision of the Secretary of Health and Human Services which denied plaintiff's application for disability insurance benefits under the Social Security Act, as amended.

Appellant applied for benefits on February 15, 1979, alleging that he had been disabled since September of 1971 due to alcoholism. The applications were denied initially on April 25, 1979, and again on reconsideration on December 4, 1979. Gerst and his attorney appeared before an Administrative Law Judge (ALJ) who considered the case *de novo* on April 25, 1980. The ALJ found he was not disabled on July 29, 1980, and the decision became final upon Appeals Council approval on September 29, 1980. Appellant timely filed his complaint for judicial review by the District Court on

November 21, 1980. The parties agreed to refer the action to a Magistrate for final determination and judgment. After considering cross motions for summary judgment, the Magistrate issued an Order and Memorandum Opinion on September 30, 1981, affirming the Secretary's decision and granting his motion to dismiss; a timely appeal followed.

Appellant is a 55 year old male high school graduate who attended college for 3½ years. He became a licensed real estate salesman in 1953 and obtained his real estate broker's license in 1958. In addition, during 1967 and 1968, he completed correspondence courses in investment banking (University of Wisconsin), business and finance (Wharton School of Business), and stock brokerage (Wall Street Institute). Appellant worked as a real estate salesman and ultimately became a partner in a real estate brokerage firm where he stayed for many years. He later decided to become a stock broker and obtained a stock sales position for which he was paid a base salary, plus commission. As a result of his drinking habits, he was forced to resign from this job in September of 1971. Appellant testified that he did not try to find work between 1971 and 1975.[1] During 1975, he did attempt to work as a real estate salesman on a straight commission, but he was "removed ... from the roster" when he failed to list or sell any property. On April 1, 1980, appellant obtained a job under a CETA grant earning an annual salary of $8,000 as an alcohol and drug counselor and program director with the Salvation Army.

Appellant claims he is disabled due to chronic alcoholism. He testified that his drinking began while he was in college and that he was drinking to excess by 1960. He dates the onset of disability, however, as 1971, the year he lost his job as a stock broker. He described a pattern of life in which he would arise late in the day, drink beer in bars during evening hours until closing, and then retire in the early morning hours after consuming additional beer at home. Several times he was arrested and found guilty of driving while intoxicated. His drinking habits continued until 1979 when he moved to Florida to live for several months with the family of one of his daughters. During this time he significantly reduced his alcohol consumption as a result of having responsibility to care for his grandson and to cook and clean for the family. In September of 1979, he returned to Youngstown, Ohio, and resumed his drinking habits. This continued until he enrolled in a Salvation Army alcoholic rehabilitation program in December of 1979. He has remained free of alcohol since that time and, as noted above, became a resident program director and counselor on April 1, 1980.

The medical records show no physical impairments related to alcoholism or otherwise. There is no end organ damage, no cirrhosis of the liver, and Gerst claims no serious physical impairments, except for a back problem, which has been described as "resolved".

A May 3, 1978 Discharge Summary from the Mahoning County Committee on Alcohol Programs, Inc. describes appellant as in the chronic stage of alcoholism. Attached to the Summary was a February, 1976, clinical psychological evaluation by Dr. Lloyd Wyatt and Mr. John Brescia.[2] They mention appellant's strong tendency to deny his problems and present himself in a favorable light. Their diagnosis was alcohol addiction with attending personality disturbance.

Dr. Karipineni Prasad, to whom appellant was sent by the Bureau of Disability Determination, made a psychiatric evaluation of plaintiff on April 12, 1979. Dr. Prasad found appellant had fair recollection of recent, remote, and momentary recall, nor-

---

1. He did, however, during this time manage his business affairs, including the handling of the sale of his home, certain stocks that he owned, a boat and other real estate; he also did the shopping for himself and his mother, with whom he lived.

2. Notes from St. Elizabeth Hospital outpatient clinic, dated February 3, 1976, also indicate that Gerst "became a problem drinker *about 2 years* ago." (emphasis added). Apparently this information came from the outpatient himself.

mal psychomotor response, coherent speech, no delusional thinking, hallucinations, or phobias, and "was capable of managing his own funds and his own interest." He did, however, have a poor selfconcept. The diagnosis was chronic alcoholism and no motivation to stop drinking. Dr. Prasad indicated he could not be employed because of his drinking habits. Gerst told Dr. Prasad "I can't help drinking."

R.C. Wayne, Director of Counseling at the Salvation Army Adult Rehabilitation Center reported that appellant became a resident of the Center on December 3, 1979, and completed a 90-day therapy period on March 3, 1980. Appellant had admitted anxiety, depression, and tension. Mr. Wayne reported, however, that appellant had been very cooperative. He was reported to be "fully recovered from alcoholism" and had been hired as a live-in counselor program manager for $8,000 per year. Consequently, he was considered to be in a "normal work environment" as opposed to the "sheltered environment prior to April 1, 1980." His prognosis was termed as guarded, "a typical prognosis for alcoholics with less than 2 years" abstention.

Subsequent to the hearing before the ALJ, an undated medical examination and report from the Ohio Rehabilitation Services Commission was submitted. This report showed a diagnosis of cured alcoholism, and no limitations on work activity; the prognosis was good.

Also submitted after the hearing but before the ALJ's decision were letters from appellant and his attorney. In his May 1, 1980 letter to his attorney, appellant stated he had resigned from the Salvation Army job because he found it "hectic and somewhat volatile, and that he was moving back to Florida." The June 23, 1980 letter from appellant's attorney informed the ALJ that appellant had become a resident staff member at the Waterfront Rescue Mission in Pensacola, Florida, for which job he received room, board, and a $5.00 per week gratuity. The attorney states the Mission has strict rules and submits that it is a "sheltered workplace and does not constitute substantial gainful activity."

We believe that the record in this case contains substantial evidence to support the decision of the Secretary. There is substantial evidence to support the finding that Gerst was not suffering from a functional non-psychotic disorder. There was no showing of any severe mental impairment or pattern of bizarre or delusional conduct due to Gerst's drinking habits. Dr. Prasad's diagnosis, indeed, supports a finding to the contrary. The ALJ thoroughly reviewed the evidence and did not find the symptoms, signs, and laboratory findings required for a finding of emotional or physical disability.

Appellant retained the capacity to engage in substantial gainful activity after 1971 when he lost his stock broker position. He actually engaged in day-to-day activities demonstrating physical and emotional ability to do work and to pursue a variety of other interests which interested him. The ALJ noted specifically that at the hearing in April, 1980, Gerst's "manner and demeanor was that of a healthy individual, animated in mood, possessing good effect and orientation with a normal to good memory."

There was no evidence or history of insomnia, loss of weight, or suicidal or antisocial tendencies. Appellant failed to establish on the record during the pertinent time such "recurrent and persistent periods of anxiety, with tension, apprehension, and interference with concentration and memory" to qualify as disabled under the law and pertinent regulations. 20 C.F.R. Subpart P, Appendix 1, § 12.04. The Secretary found substantial basis in the record, considered as a whole, to support his finding of "no marked restriction of daily activities and construction of interests." Gerst failed to show, in summary, any mental, emotional, or personality disturbance type of disorder related to his alcoholism that would establish a disability under Sections 223(d)(1) or 1614(a)(3)(A) of the Social Security Act, or any impairment under 20 C.F.R. § 404.1517 (1980). There was substantial evidence to support the Secretary's contrary determina-

tions. Gerst last met earnings requirements under the Act on September 30, 1976, but consideration of subsequent medical evidence was pertinent in view of appellant's continuing alcoholism problems from 1971 through the hearing date in 1980.

Consideration has also been given to Gerst's activities after September 30, 1976 because his drinking habits remained substantially the same after 1976 (until 1980) as before 1976. These post-1976 activities bear upon his ability and capacity to work, his recurrent periods of anxiety and apprehension, as well as his ability and effort to stop drinking if his volition and interests so directed him. Appellant himself presented and relied upon the post-1976 evidence, although he no longer met earning requirements then, and the requisite inquiry in this case was whether he was disabled, as he claimed beginning in 1971, or at any time before September 30, 1976, so as to be entitled to benefits.

We are asked to adopt the "standard for disability due to alcoholism" under *Adams v. Weinberger*, 548 F.2d 239 (8th Cir.1977), a frequently cited decision of the Eighth Circuit Court of Appeals. For the reasons previously indicated, we find substantial evidence to affirm the Secretary's decision based on our review of the Act, the pertinent regulations that relate to chronic alcoholism, and the record before us. The *Adams* case remanded the claim under consideration because the *district court and the ALJ* emphasized, in an alcoholism situation, "the absence of evidence of 'significant organ damage that precludes work activity'," *id.* at 242, based on previous administrative regulations. The *Adams* court held that "a more general standard" was appropriate, referring to regulations also applicable to Gerst, "based on symptoms, signs and laboratory findings." *Id.* at 242. The *Adams* court also found fault with the administrative determination that "it must be found that the power and ability to remedy [Adams' plight] rests solely with him," and the district court's comment that "you cannot be a disabled alcoholic until you have tried otherwise." *Id.* at 243. The *Adams* decision, rather, placed the emphasis on

"whether the claimant is addicted to alcohol and as a consequence has lost voluntary ability to control its use," *id.* at 244, citing among other authorities, Judge Combs' dissent in *Osborne v. Cohen*, 409 F.2d 37 (6th Cir.1969). In effecting the remand, the *Adams* court directed the agency to apply the same standards as those applied to Gerst in this case, and that it address "claimant's own ability to resolve his problems, with or without additional medical help ... within the context of his illness." *Adams*, 548 F.2d at 245.

For several reasons, we see no inconsistency between the *Adams* opinion and our opinion here. First, in both cases, the courts hold that disability determinations are to be made in light of the then-current regulations of the Secretary. In this case, the administrative law judge properly applied the Secretary's directive that a determination of disability due to alcoholism shall be based upon "symptoms, signs, and laboratory findings." 20 C.F.R. § 404.-1506(d). Second, and as a corollary to the first point, we agree with the *Adams* court that to base a disability determination in alcoholism cases solely upon the absence of "significant organ damage" is to misapply the regulations. There is no question that alcoholism can produce both physical and mental impairments. To properly comply with the regulations, the Secretary must consider the "sum total" of these impairments. *Adams*, 548 F.2d at 243 (quoting the Commissioner of Social Security).

Third, both the *Adams* court and this court are in agreement that in alcoholism disability cases, an important question is whether the claimant has lost the voluntary ability to control his use of alcohol. However, this question is not asked merely to determine whether the claimant is, in fact, an alcoholic. As the regulations clearly state, the mere fact of being an alcoholic "will not, by itself, be the basis for a finding that an individual is or is not under a disability." 20 C.F.R. § 404.1506(d). Rather, the question is important in light of the language in 20 C.F.R. § 404.1507. 20 C.F.R. § 404.1507 provides:

An individual with a disabling impairment which is amenable to treatment that could be expected to restore his ability to work shall be deemed to be under a disability if he is undergoing therapy prescribed by his treatment sources but his impairment has nevertheless continued to be disabling or can be expected to be disabling for at least 12 months. However, *an individual who willfully fails to follow such prescribed treatment cannot by virtue of such failure be found to be under a disability.* Willful failure does exist if there is justifiable cause for failure to follow such treatment.

(emphasis added). One of the symptoms of alcoholism, unlike other potentially disabling diseases, is its victims tendency to deny the severity of their condition. We are in agreement with *Adams,* therefore, insofar as it provides that in cases of alcoholism, the Secretary may not simply take the claimant's disavowal of his condition at face value. We would add, however, that such disavowal testimony may be relevant where supported by circumstantial evidence or lay testimony.

We add that we see no inconsistencies between our decision in *Osborne v. Cohen,* 409 F.2d 37 (1969) and our decision here. In *Osborne,* we observed that the claimant never asserted that his alcoholic condition was disabling. Evidence of the condition having been submitted, however, we commented upon it. Our comments included the observation that "a doctor testified that the affliction was not so deep-seated as to be irremediable, that the claimant was not psychotic, and that the only bar to recovery was claimant's lack of motivation and cooperation." *Id.* at 39. There is nothing inconsistent between this reference to *medical* findings, the regulations, and our analysis here that the Secretary may not simply rely on the claimant's statement that he can control his drinking, and that motivation and cooperation with prescribed treatment is relevant to disability.

To conclude, we hold that there is substantial evidence in the record to support the Secretary's decision denying Gerst disability benefits.