Louis M. CORBECKY, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

No. 83–C–902–S.

United States District Court, W.D. Wisconsin.

May 29, 1984.

As Corrected May 31, 1984.

Kim R. Genich, Eau Claire, Wis., for plaintiff.

Thomas D. Sykes, Asst. U.S. Atty., Madison, Wis., for defendant.

SHABAZ, District Judge.

This is an action for review of the final decision of the defendant Secretary to deny plaintiff Louis M. Corbecky's application for disability insurance benefits pursuant to Title II, Sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and for Supplemental Security Income pursuant to Title XVI of the Act, 42 U.S.C. § 1381 et seq.

The decision of the Secretary is affirmed.

## BACKGROUND

Louis M. Corbecky is a forty-nine year old man born on June 28, 1934. He worked as a bus driver from February to November 1980, and has not held a job since then.

On February 3, 1982 Corbecky applied to the Social Security Administration for a determination that he was disabled and eligible to receive disability and supplemental income benefits, alleging that he had become unable to work as of November 29, 1981 because of heart disease and high blood pressure. His initial application was denied on May 4, 1982 and his May 5, 1982 petition for reconsideration was denied on June 1, 1982. Corbecky then requested a *de novo* hearing before an Administrative Law Judge (ALJ). The hearing was held on November 16, 1982 and the record was closed five months later on April 19, 1983. On May 18, 1983 Corbecky was notified of the decision of the ALJ that he was not disabled. That decision became the final decision of the Secretary on August 10, 1983 when the Appeals Council denied Corbecky's request for review. Corbecky filed this action shortly thereafter.

## EVIDENCE OF RECORD

Plaintiff Corbecky has a tenth-grade education and has been employed most of his adult life at a variety of unskilled jobs, serving stints as a construction worker, janitor, factory worker, security guard, and bus driver. He testified that he had been fired from most of his jobs because of a problem with alcohol that began in 1967.

*Alcoholism*

The record reveals that Corbecky is a chronic alcoholic. He attributed the dissolution of his first marriage to alcoholism and both he and his former second wife testified that alcoholism destroyed their marriage. He was hospitalized for alcohol rehabilitation in 1968, 1970, 1976, 1978, 1979, 1980 and 1981. His longest period of sobriety during that period was eleven months. In the discharge summary from Corbecky's most recent rehabilitation hospitalization at St. Croixdale Hospital in Prescott, Wisconsin, from October 23, 1981 to November 20, 1981, a counselor stated:

This was the third admission to this facility for Louis, a 47-year-old divorced male caucasian who voluntarily admitted himself asking for help for his drinking problem. Although Louis has been here twice previously, he has also been in treatment four other times previously. Specifics precipitating treatment at this time were that Louis was very sick and had lost everything he owned, and decided he needed help ... Louis' poor health and nutritional state was addressed by the dietician and his body responded well to the special diet ... Louis made good plans for his own discharge and I feel will probably follow them up. I feel that Louis completed treatment satisfactorily while here... PROVISIONAL PROGNOSIS: Chronic Alcoholism. DISCHARGE DIAGNOSIS: Chronic Alcoholism.

Exhibit 24 at 144.

A psychological evaluation of Corbecky made during that hospitalization by psychologist John Hamann summarizes the results of various tests performed by Hamann:

The Shipley indicates that Louis is below average in ability, but there is no indication of [a] thinking impairment. The MMPI indicates an individual who is somewhat unique. He is indicating a reaction to stress and consequently is quite depressed. He is also an individual who has a tendency to be overly sensitive to what other people think of him. This vacillation confuses people around him and he loses support of these people because of his vacillating behavior ... Generally Louis is in fairly good mental health. A lot of the stress he has is from the low self-esteem which seems to emanate from his poor performance in formal education.

Exhibit 24 at 146.

Apparently, Corbecky was not successful in his latest rehabilitation attempt. He was admitted to a detoxification center three times over the summer of 1982 and testified that he was drinking periodically during the months preceding his disability hearing.

Another psychological evaluation of Corbecky was performed after the hearing, at the direction of the ALJ, in January 1983. Psychologist Harlan Heinz reported on the basis of test results that,

He [Corbecky] is functioning on the low end of the average range of intellectual functioning ... His memory quotient of 100 suggests that he has average overall memory. The Bender Gestalt confirms specific organicity with poor fine motor coordination skills. He has a long history of problems with alcoholism and marital conflict and is presently living alone after having failed in his attempt to reunite with his exwife [sic]. He is viewed as being able to manage his own benefits.

Exhibit 23 at 167. Heinz also noted that Corbecky exhibited an anxiety reaction with alcoholism in a passive-aggressive personality.

*Heart Disease and Other Impairments*

Corbecky was hospitalized at Sacred Heart Hospital in Eau Claire for chest pains on December 30, 1981 and remained in the hospital for tests until January 7, 1982. (See Exhibit 15). His physician, Dr. T.L. Shipe, diagnosed his condition at that time as coronary artery disease with acute angina pectoris. Shipe noted that Cor-

becky's pain was triggered by exertion and cold temperatures, that his history of hypertension and family history for coronary artery disease was consistent with the diagnosis and that electrocardiogram tests revealed some abnormalities traceable to heart disease that were resolved with rest after several days in the hospital. A thallium myocardial study revealed exercise-induced ischemic changes in Corbecky's heart. The only significant result of Corbecky's performance on the exercise treadmill test was development of chest tightness consistent with angina and suggestive of ischemic heart disease. Shipe prescribed several medications for Corbecky.

Doctors also found that Corbecky was suffering from a mild degree of artery obstruction traceable to chronic bronchitis from his cigarette smoking. His hypertension (high blood pressure) was said to be well controlled. Corbecky's poor vision in his left eye, a so-called "lazy eye" was also noted, but Corbecky's most recent eye exam, from February 1980, indicates that his right eye is correctable to 20/20 with glasses.

Between January and December 1982 Corbecky was seen several times at the Eau Claire Family Practice Clinic by Drs. Kimmel and Shipe and continued on heart medication and medication for bronchitis throughout that period. (See Exhibit 20.) Dr. Shipe's consistent diagnosis was coronary artery disease, alcoholism, and anxiety associated with coronary artery disease and the recent deaths of his brothers from heart attacks.

In December 1982 Corbecky was again admitted to Sacred Heart Hospital, this time for a disability evaluation by Dr. Saleh A. Obaid, an internist who had consulted with Dr. Shipe regarding Corbecky's heart problem during his January 1982 hospitalization for chest pains. (See Exhibit 24.) Obaid diagnosed Corbecky as having arteriosclerotic heart disease with angina pectoris, Class II; chronic obstructive pulmonary disease; and essential hypertension. That

diagnosis was based on Corbecky's health history, his reports of angina from exertion, and the results of a battery of tests. Corbecky achieved 85% of the maximum response on the treadmill test and no significant abnormalities were indicated in the electrocardiogram taken at that time. Regarding Corbecky's ability to work, Obaid merely stated that Corbecky's heart disease and marked cardiovascular deconditioning would prevent him from engaging in strenuous activity and from working as a construction worker. Corbecky smoked up to two packs of cigarettes at the time of Obaid's examination and also took Nifedipine and Atenolol daily.

Finally, a Dr. John LaBree, another internist, was retained by the Social Security Administration to issue an opinion regarding the severity of Corbecky's heart disease on the basis of the records from his January 1982 hospitalization for chest pain and his December 1982 evaluation by Dr. Obaid. LaBree stated, "Claimant [Corbecky] has probable ischemic heart disease by history, with angina on effort, that is stable in character. Exercise tolerance test is normal, suggesting minimal disease." Exhibit 26 at 190. LaBree concluded that Corbecky's heart disease did not meet the listed impairment and that he should be able to engage in moderate physical activity not requiring frequent heavy lifting or frequent stair climbing. LaBree also suggested that Corbecky's condition would improve if he lost weight, stopped smoking, and began an exercise program.

Corbecky himself testified that he was able to take care of himself and his one room, second-story apartment and that his basic daily activities included listening to the radio, walking, and playing cards. Regarding his heart disease, he described the angina he experienced as a burning pain that came on occasionally after walking seven or eight blocks, especially in cold weather. Regarding his pulmonary or lung disease, he testified that his lungs became congested several times a year and

that antibiotics and an inhaler prescribed by his doctor gave him relief. Corbecky also stated that he was smoking about half a pack of cigarettes a day at the time of the hearing.

## DECISION OF THE ALJ

After summarizing the above evidence without significant omission, the ALJ determined that Corbecky suffered from arteriosclerotic heart disease with stable angina pectoris, possible subendocardial infarction, hypertension controlled with medication, mild obstructive lung disease, amblyopia and astigmatism in the left eye correctable with corrective lenses, anxiety reaction, and alcoholism, but that none of these impairments met or were medically equivalent to the impairments listed in 20 C.F.R. Subpart P Appendix I. The ALJ further found that Corbecky was not precluded by his exertional and non-exertional impairments from performing light or sedentary work not involving repetitive stair climbing, fine motor coordination skills or exposure to extreme heat or cold of the sort he had performed prior to alleged onset of his disability, i.e. work as a security guard. Accordingly, the ALJ concluded that Corbecky was not under a disability at any date prior to his decision.

## OPINION

A district court reviewing a disability determination by an ALJ is not to reweigh the evidence or substitute its judgment for that of the judge. Rather, the relevant inquiry is whether the judge's decision is supported by substantial evidence in the record.

The Court believes that the decision of the ALJ in the immediate case was supported by substantial evidence.

First of all, regarding plaintiff Corbecky's obstructive lung disease, eyesight problems, and hypertension, there is no evidence whatsoever that these impairments are even severe impairments under the definition contained in 20 C.F.R. § 404.1520(c), much less of sufficient severity to meet a listed impairment. By all accounts Corbecky's lung disease has not resulted in a significant decrease in his vital capacity on an everyday basis, and is apparently controlled by an inhaled bronchodialator. Likewise, his eye and high blood pressure problems appear to be well-managed. These impairments are therefore of further relevance only to the extent that they may play a role in increasing the severity of other impairments.

Regarding Corbecky's alcoholism, there is no question but that he is à chronic alcoholic in the sense that he has lost the ability to control his drinking. *Ferguson v. Schweiker*, 641 F.2d 243 (5th Cir.1981); *Hicks v. Califano*, 600 F.2d 1048, 1051 (4th Cir.1979). The evidence is uncontroverted that Corbecky's alcoholism has cost him countless jobs and destroyed his two marriages and that his every attempt at rehabilitation has failed.

Yet, alcoholics cannot be disabled on the basis of diagnosis alone. 20 C.F.R. § 404.1525(e). Social Security Ruling 82–60 states, "Drug addicts and alcoholics are subject to the ills that may affect any other applicant. Drug addiction and alcoholism are diagnostic terms; they do not denote impairment value or severity. It is necessary to evaluate the severity of the impairment which may be associated with, manifested by, result from, or co-exist with these diagnoses." SSR 82–60 at 139. As alcoholism can produce both physical and mental impairments, to determine whether an individual is disabled by alcoholism the Secretary must consider the sum total of the impairments caused by the disease upon the basis of symptoms, signs, and laboratory findings. *Gerst v. Secretary of Health & Human Services*, 709 F.2d 1075, 1078 (6th Cir.1983) (*per curiam*).

Considering the facts of this case in light of the law, it is apparent Corbecky is not

disabled by alcoholism. Alcoholism is classified as a functional non-psychotic mental disorder under 20 C.F.R. Subpart P Appendix 1 12.04.

The only criterion under subsection A that Corbecky comes close to meeting from the evidence in the record is A(2), with Dr. Heinz's statement that Corbecky suffers from an "anxiety reaction with alcoholism in a passive aggressive personality," but that finding is insufficient to qualify Corbecky under the regulation where such anxiety does not appear to interfere with his concentration, memory or ability to understand direction. Furthermore, under subsection B Corbecky's daily activities are not markedly restricted, nor is there evidence that his interests are constricted, that his personal habits have deteriorated, or that his ability to relate to others is seriously impaired.

The only significant physical manifestation of Corbecky's alcoholism appears to be poor fine-motor coordination.

Therefore, the ALJ's determination that Corbecky's alcoholism did not result in an impairment equivalent in severity to a listed impairment is clearly supported by substantial evidence. .

Finally, regarding Corbecky's ischemic heart disease, the chest pain he suffers from is certainly of cardiac origin as required under Subpart P Appendix 1 listing 4.00 E. However, the electrocardiograms and treadmill exercise tests performed upon Corbecky towards the end of his January 1982 hospitalization and during the December 1982 evaluation by Dr. Obaid were almost normal and did not reveal the sort of changes in Corbecky's heart required under listing 4.04 for a finding of disability. Dr. Obaid noted that Corbecky could not engage in strenuous activity or perform construction work, and Dr. LaBree stated that Corbecky could not climb stairs repetitively or lift heavy objects, but neither doctor found that Corbecky's condition met the listed impairment. Thus,

the ALJ's finding that Corbecky was not disabled on the basis of his heart disease alone is aupported by substantial evidence.

The only remaining issues are whether Corbecky's multiple impairments are equivalent to a listed impairment and whether there is substantial evidence that he retained sufficient functional capacity to engage in relevant work activity.

Corbecky argues as he did before the ALJ (see Exhibit 27 at 195) that his alcoholism prevents him from undergoing the rehabilitation for his heart condition recommended by Dr. LaBree and that this interrelationship between his impairments should have led to the conclusion that he suffers from multiple impairments equivalent to a listed impairment.

Corbecky's argument rests upon a negative implication drawn from LaBree's closing comment that, "with a vigorous rehab program ... his [Corbecky's] prognosis for gainful employment is excellent." According to Corbecky, that statement means that without an adequate medical rehabilitation program, he has a poor prognosis for employment. He then argues that his alcoholism prevents him from engaging in such a program.

The Court believes that argument stretches LaBree's report a bit too far. The better reading of LaBree's report is that Corbecky's disease was not only less severe than the listed impairment, but that it would not be severe at all if Corbecky were participating in a disciplined rehabilitation program.

Section 404.1522 of 20 C.F.R. Subpart P states that, "we can combine unrelated impairments to see if together they are severe enough to keep you from doing substantial gainful activity." In this case, the ALJ properly considered the restrictions stemming from Corbecky's alcohol-related impairment and the restrictions stemming from his ischemic heart disease to arrive at the conclusion that Corbecky could perform

"light" or "sedentary" work not requiring repetitive stair climbing, fine-motor coordination skills or exposure to extreme heat or cold. The very fact that he *could* perform such work, a conclusion based upon the medical evidence, would be inconsistent with a conclusion that through aggregation or "medical equivalence" (see § 404.1526), his multiple impairments were the equivalent of a listed impairment directing a finding that Corbecky was disabled.

The issue is whether there is substantial evidence in the record to support the ALJ's conclusion that, in spite of Corbecky's heart disease, an exertional impairment, and his alcoholism, a non-exertional impairment, he retained sufficient residual functional capacity to perform past relevant work as a security guard. Corbecky contends that substantial evidence does not exist due to the frequency of his drinking bouts and his inability to climb stairs repetitively or withstand extremely hot or cold temperatures.

█ With respect to the frequency of Corbecky's drinking bouts, the question is whether a claimant has physical or mental impairments that would prevent him from engaging in substantial gainful activity, not whether he is able to convince an employer to hire and retain him in spite of his alcoholism. As the Sixth Circuit said in *Gerst*, "[The claimant] failed to show, in summary, any mental, emotional, or personality disturbance type of disorder that would establish a disability ..." *Gerst*, 709 F.2d at 1077.

The Court has more difficulty resolving Corbecky's second contention. Corbecky testified that his previous work as a security guard had involved a significant amount of stair climbing and some exposure to winter weather. Yet, the ALJ found that because Corbecky had the exertional capacity to do "light" or "sedentary" work and the position of security guard is defined as "light" work in the Dictionary of Occupational Titles, Corbecky would be able to perform his past work as a security guard. Although the Court is troubled with the ALJ's readiness to draw that conclusion in light of Corbecky's testimony, believes, nonetheless, that had the ALJ progressed to the fifth step in the process, the determination of whether Corbecky could perform other substantial gainful activity, the record indicates Corbecky was not disabled. The Court believes this finding to be justified upon the basis of Corbecky's exertional capacity to do light work and the minor nature of his nonexertional impairments.

Accordingly,

## ORDER

IT IS ORDERED that the final decision of the defendant Secretary denying the application of plaintiff Louis M. Corbecky for disability and supplemental security income is AFFIRMED.