922 F.2d 841
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jettie BAILEY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 90-3265.
 United States Court of Appeals, Sixth Circuit.
 Jan. 3, 1991.
 
 Before KRUPANSKY and MILBURN, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant Jettie Bailey appeals the judgment of the district court affirming the decision of the Secretary of Health and Human Services ("Secretary") denying him supplemental security income benefits ("SSI") under the Social Security Act. For the reasons that follow, we affirm.
 
 I.
 A. Procedural History
 
 2
 Claimant filed an application for SSI benefits on December 29, 1986, alleging that he was disabled due to right foot problems, back problems, and drug/alcohol problems, with an onset date of June 10, 1980. His application was denied initially and upon reconsideration. Claimant requested a hearing before an administrative law judge ("ALJ") who determined that claimant was not disabled. The Appeals Council denied claimant's request for review, and claimant sought judicial review of the final decision of the Secretary in the United States District Court. The parties consented to magistrate trial jurisdiction pursuant to 28 U.S.C. Sec. 636(c), and, on January 25, 1990, the magistrate affirmed the decision of the Secretary, holding that claimant was not disabled and, therefore, was not entitled to SSI benefits under the Social Security Act. This timely appeal followed.
 
 B. Facts
 
 3
 Claimant was born on January 17, 1949, and was thirty-nine years of age at the time of his administrative hearing. Claimant has worked in the past as a dishwasher, key punch operator, laborer and painter. He testified that he was incarcerated from 1973 to 1979, from 1981 to 1983, and during part of 1985 through 1986. Claimant has been treated at numerous hospitals, clinics, and rehabilitation centers for drug/alcohol related problems.
 
 
 4
 On July 15, 1980, claimant entered the Middletown Hospital in Middletown, Ohio, for treatment of his drug addiction and for detoxification. On July 22, 1980, claimant checked out of that hospital against medical advice. From June 10 until June 15, 1981, claimant underwent detoxification at the Veterans Administration Hospital in Cincinnati, Ohio. Again, claimant checked out of this hospital against medical advice. From May 3-8, 1984, claimant underwent detoxification at Fort Hamilton Hughes Memorial Hospital in Hamilton, Ohio. On March 30, 1985, claimant was admitted to the Comprehensive Center for Alcohol Treatment in Cincinnati where he was diagnosed as suffering from acute alcoholism and discharged the same day.
 
 
 5
 From June 9 through June 26, 1987, claimant was hospitalized for alcohol detoxification at the Veterans Administration Medical Center. The records of that center indicate that claimant's memory was well-preserved and that he did not appear to be psychotic. From August 10 through September 8, 1987, claimant was again treated for alcohol dependency at the Veterans Administration Hospital. On October 9, 1987, claimant was admitted to the Salvation Army Rehabilitation Center. The record does not indicate how long he remained at this Center.
 
 
 6
 From November 20 through December 7, 1987, claimant was again treated at the Veterans Administration Hospital. Records completed during that stay at the hospital indicate that claimant stated he was drinking excessive amounts of alcohol, but he was not using street drugs. Those records also indicate that claimant was functioning well and that he was interacting well with others. The Veterans Administration Hospital referred claimant to the Nova House where he was treated in their half-way house facility from January 1 through February 25, 1988. Claimant was discharged from that institution as a result of his intimidation of other residents, his nonconformance with rules, his drinking, and his unwillingness to find employment or work toward his treatment goals.
 
 
 7
 At the hearing before the ALJ, claimant testified that his most severe impairment was his abuse of alcohol, and that he still abused street drugs such as cocaine, Valium, and Ritalin. Claimant testified that he drank everyday--"maybe a couple fifths [presumably of liquor] and pretty near a case of beer." Claimant further testified that at the half-way house where he was residing at the time of his hearing, he washed dishes, made his bed, did his own laundry, and played an occasional game of chess.
 
 
 8
 Claimant has been examined by several doctors. In January of 1987, he was seen by Dr. Richard T. Sheridan, M.D., who, the record reveals, is apparently an orthopedic specialist. Most of Dr. Sheridan's report is devoted to the physical examination of claimant's spine and lower extremities, but Dr. Sheridan did state in his report that claimant's memory was poor. Additionally, Dr. Sheridan's records indicate that claimant told him he "drank beer every four-five days."
 
 
 9
 On January 23, 1987, claimant underwent a psychological evaluation conducted by Dr. Norman Berg, Ph.D., a clinical psychologist. Dr. Berg noted that claimant was neat and well-groomed, that his memory for both recent and remote events was fair, and that he was able to maintain his attention and concentration. On the WAIS-R test administered to claimant by Dr. Berg, claimant scored within the average range of intelligence. On the Wechsler Memory Scale administered by Dr. Berg, claimant scored somewhat below average in memory functions when compared with other individuals of his age. Although Dr. Berg noted that claimant was still drinking, he diagnosed claimant as having alcohol dependency in remission and a mixed substance dependency in remission. Dr. Berg concluded that claimant "should be able to relate adequately with others in a work setting based on his presentation throughout our evaluation." Additionally, Dr. Berg noted that "[t]he [claimant] is capable of coping with the stress and pressure involved in routine day-to-day work."
 
 
 10
 Because claimant was hospitalized for alcohol/drug abuse treatment following Dr. Berg's evaluation in January of 1987, follow-up interrogatories were sent to Dr. Berg in November of 1987. Dr. Berg's answer to the interrogatories was that claimant's substance dependence could still be in remission in spite of the treatment claimant had received since his evaluation of claimant in January of 1987.
 
 
 11
 Claimant underwent psychological evaluations conducted by Dr. Michael J. Belcher on November 5, 1987, and again on January 9, 1988. Dr. Belcher noted that claimant's dress and personal hygiene appeared to be good, and that claimant was cooperative and appropriate in his interactions with him. Dr. Belcher observed that claimant's level of consciousness during the evaluation sessions was unimpaired and that claimant was not under the influence of alcohol or other drugs during any of the evaluation sessions. Although Dr. Belcher concluded that claimant suffered from an "organic mental disorder," he also noted that claimant "exhibited no memory impairment" and that claimant's current intellectual level appeared to be average. Dr. Belcher also opined that claimant manifested only a marginal ability to work and that his ability to tolerate the stress of a work environment would prevent him from engaging in "substantial work activity."
 
 
 12
 On June 10, 1988, claimant was examined by a psychologist, Dr. Warren Shea. Dr. Shea observed "non-blink" in claimant, which Dr. Shea emphasized was a sign of psychosis. Dr. Shea disagreed with Dr. Belcher's diagnosis of organic brain damage, but found that "because of his psychological deficits he is not going to be able to enter the job market."
 
 
 13
 At the hearing before the ALJ, a vocational expert ("V.E.") testified. The V.E. was asked the following hypothetical question: "Now, if you were again to assume a person of [claimant's] age, education, and work experience, and were to assume this time that the person had no exertional impairments, but had nonexertional impairments which restricted him to minimal interpersonal contacts in the workplace, and to simple repetitive tasks, could you identify any jobs in the local economy such a person could perform?" The V.E. answered that, consistent with these functional limitations, claimant could perform his past relevant work as either a dishwasher or key punch operator in addition to a number of other sedentary positions such as verifier operator, data code operator, billing machine operator, and audit machine operator.
 
 
 14
 The ALJ concluded that claimant's drug and alcohol abuse and associated personality disorder and dysthymic disorder[1] significantly affected claimant's ability to perform basic work activities, and had to be considered severe. The ALJ further concluded that claimant's alcohol and drug abuse and associated personality and emotional disorders, although severe and continuing, did not meet or equal any impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Regarding claimant's complaints of physical problems due to his back and foot, the ALJ concluded that there was inadequate evidence that any of these impairments were severe.
 
 
 15
 The ALJ rejected claimant's testimony that he totally lacked the voluntary ability to control his intake of alcohol and other drugs because such an assertion, the ALJ found, was not supported by the record. Relying on the testimony of the V.E. that claimant could perform his past relevant work as a dishwasher, along with several other jobs, the ALJ found that claimant was not disabled within the meaning of the Act.
 
 
 16
 In this appeal, claimant argues that (1) the district court erred by finding that his subjective complaints were not fully substantiated by the clinical findings and could not be considered entirely credible, especially as to his inability to consistently control his use of alcohol and other substances; (2) the district court erred by failing to consider the combined, cumulative and mutually exacerbating effects of all claimant's severe psychological, emotional and chemical impairments; and (3) the district court erred by accepting answers of the V.E. to hypothetical questions which failed to contain a fair and full listing of all claimant's documented impairments.
 
 II.
 
 17
 "This court's standard of review for supplemental security income cases mirrors the standard applied in social security disability cases." Philpot v. Secretary of Health and Human Serv., No. 88-6435 (6th Cir. Oct. 23, 1989) (unpublished opinion). The scope of review in this case is limited to the inquiry of whether the Secretary's findings are supported by substantial evidence. Gaffney v. Bowen, 825 F.2d 98, 100 (6th Cir.1987) (per curiam). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). If substantial evidence supports the Secretary's decision, it must be affirmed even though there is alternatively substantial evidence to support a finding of disability. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986) (en banc). This court may not review the case de novo, nor make credibility determinations, nor weigh the evidence, Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984), for these functions are left to the Secretary. Young v. Secretary of Health and Human Serv., 787 F.2d 1064, 1066-67 (6th Cir.), cert. denied, 479 U.S. 990 (1986). "The Secretary and not the court has the power to weigh all the evidence and resolve significant conflicts in the testimony." Bradley v. Secretary of Health and Human Serv., 862 F.2d 1224, 1227 (6th Cir.1988) (per curiam) (citing Myers v. Richardson, 471 F.2d 1265, 1267-68 (6th Cir.1972)).
 
 A.
 
 18
 Claimant's first argument is that the district court erred in finding that claimant's subjective complaints relating to his alcohol and drug abuse problems were not fully substantiated by the clinical findings and could not be considered entirely credible, especially as to claimant's inability to consistently control the use of alcohol and other substances. In evaluating the credibility of a claimant, this circuit has recognized that a reviewing court should be "particularly reluctant" to substitute its judgment of the credibility of the claimant for that of the ALJ, since the ALJ has "seen the claimant in the flesh" and has had the opportunity to observe his demeanor. Gooch v. Secretary of Health and Human Serv., 833 F.2d 589, 592 (6th Cir.1987) (per curiam), cert. denied, 484 U.S. 1075 (1988). Furthermore, in making a credibility determination regarding claimant, the ALJ could properly consider the daily living activities in which claimant engaged. Crisp v. Secretary of Health and Human Serv., 790 F.2d 450, 453 (6th Cir.1986). The ALJ's observation that claimant's testimony is inconsistent with the objective medical record is correct.
 
 
 19
 Claimant testified that at the time of the hearing before the ALJ he drank "maybe a couple fifths and pretty near a case of beer" everyday, but at the same time he testified that his weekly income was only $5.00. Additionally, claimant's girl friend reported in February of 1987 that claimant did not drink everyday. In January of 1987, claimant stated to Dr. Sheridan that he drank "beer every four-five days." Dr. Berg's records also indicate that claimant stated that in November of 1987, he was only drinking beer "once or twice a week."
 
 
 20
 Furthermore, there is no evidence in the record to indicate that claimant could not abstain from using drugs. Claimant denied that he was using street drugs when he was treated at the Veterans Administration Hospital from November 20 through December 7, 1987, and claimant also informed Dr. Shea that when he was in the penitentiary, he did not use drugs. In January of 1987, claimant told Dr. Berg that he had not used street drugs in the past two and one-half years except for using cocaine once.
 
 
 21
 Claimant's daily living activities are also inconsistent with his assertion that he consumes approximately a case of beer along with liquor everyday. At the time of the hearing, claimant resided in a half-way house where he was responsible for washing dishes and where he did his own laundry and occasionally played chess. Claimant's girl friend stated that claimant visited his family, and he was able to interact with others.
 
 
 22
 Claimant also argues that the district court erred in not giving more weight to the findings of Dr. Belcher and Dr. Shea. At the outset, it should be noted that when the record contains inconsistent medical reports, the ALJ is vested with the discretion to weigh all the evidence and to resolve conflicts in the testimony. Bradley, 862 F.2d at 1227. The findings of Dr. Belcher and Dr. Shea are contradicted by the findings of Dr. Berg, and, as noted by the ALJ, the weight to be accorded Dr. Belcher's examination and diagnosis must be reduced because of the fact that many parts of his diagnosis are self-contradictory. Therefore, the ALJ did not err in affording the findings of Dr. Shea and Dr. Belcher little, if any, weight.
 
 
 23
 Even if the district court had found that claimant's subjective complaints were fully substantiated by the record and that claimant was unable to consistently control his intake of alcohol and other substances, such a finding would not establish that claimant was disabled. "[T]he mere inability to control alcohol intake is not sufficient to allow for a finding of disability. There must be serious interference with the claimant's normal day-to-day activities." Cornette v. Secretary of Health and Human Serv., 869 F.2d 260, 262 (6th Cir.1988) (per curiam) (quoting LeMaster v. Secretary of Health and Human Serv., 802 F.2d 839, 842 (6th Cir.1986)); Gerst v. Secretary of Health and Human Serv., 709 F.2d 1075, 1078 (6th Cir.1983) (per curiam).
 
 B.
 
 24
 Claimant's second argument is that the district court erred by failing to consider the combined and cumulative effects of all his impairments. "The Social Security Act requires the Secretary to consider the combined effects of impairments that individually may be nonsevere, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability." Foster v. Bowen, 853 F.2d 483, 490 (6th Cir.1988); 42 U.S.C. Sec. 423(d)(2)(C).
 
 
 25
 We have recognized that it is not reasonable "[t]o require an ... elaborate articulation of the ALJ's thought processes," and that the ALJ's decision, by way of implication, may indicate that the ALJ did consider the combination of impairments. Gooch, 833 F.2d at 592; see also Foster, 853 F.2d at 490. It is clear that the ALJ's approach in this case met the standards set forth in Foster and Gooch which relate to the sufficiency of the ALJ's articulation regarding his consideration of all claimant's impairments and the combined effects of those impairments.
 
 
 26
 What claimant seems to be arguing is that the ALJ did not consider his combined impairments because the ALJ did not consider the impairments the ALJ found that claimant did not have. However, it was within the authority of the ALJ to consider the evidence and to determine what impairments affected claimant, and the ALJ was not bound to credit every impairment alleged by claimant.
 
 C.
 
 27
 Lastly, claimant argues that the district court erred by accepting answers of the V.E. to hypothetical questions which failed to contain a fair and full listing of all claimant's documented impairments. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [claimant's] individual physical and mental impairments.' " Varley v. Secretary of Health & Human Serv., 820 F.2d 777, 779 (6th Cir.1987) (quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir.1984)). It is clear, as discussed earlier, that the ALJ was vested with the authority to weigh all the evidence, to compare the objective medical record to claimant's subjective complaints, and to resolve the conflicts in the testimony. Having thus sifted through the evidence, the ALJ determined that claimant was, in fact, able to voluntarily control his intake of alcohol and drugs. Therefore, the hypothetical question, which recognized that claimant might have minimal interpersonal problems in a work environment, accurately portrayed claimant's individual mental impairments as found by the ALJ.
 
 III.
 
 28
 Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 A dysthymic disorder results from being affected with dysthymia. Dysthymia is defined as "[a]ny mental disorder ... [m]ental depression; despondency." 1 J.E. Schmidt, Attorneys' Dictionary of Medicine, D-144 (1990). Dr. Belcher had diagnosed the claimant as suffering from a dysthymic disorder